**Jacob TELLES, Plaintiff,**

v.

**The CITY OF EL PASO,
et al., Defendants.**

**No. EP–03–CV–0528–KC.**

United States District Court,
W.D. Texas,
El Paso Division.

March 8, 2007.

Sam Snoddy, Law Office, El Paso, TX, for Plaintiff.

Jennifer F. Callan, El Paso City Attorney's Office, Mark David Pierce, Office of Mark D. Pierce, Duane A. Baker, Gary B. Weiser, Attorney at Law, John David Gates, Eduardo Miranda, Annabell Perez, El Paso, TX, for Defendants.

## ORDER

CARDONE, District Judge.

On this day, the Court considered Defendants County of El Paso's and District

Attorney Jaime Esparza's Motion for Summary Judgment, Defendant City of El Paso's Motion for Summary Judgment, and Defendant Police Chief Carlos Leon's Motion for Summary Judgment. For the reasons set forth herein, the County's, Jaime Esparza's, the City's, and Carlos Leon's Motions are **GRANTED**. Trial will be set by separate order of this Court for the claims against the individual police officers, who have no active motion for summary judgment in this matter.

## I. BACKGROUND

As an initial matter, the Court notes that the County of El Paso's Proposed Undisputed Facts are irrelevant to the instant case. It appears that the County merely recycled the Proposed Undisputed Facts from the case of *Terrell v. City of El Paso*, No. EP–06–cv–0042, and changed the name of the plaintiff in the caption of the case only. Within the Proposed Undisputed Facts, the County refers only to Terrell, failing to so much as mention Telles. Therefore, the Court has ignored this document and relied upon the proposed undisputed facts filed by the other parties to develop this background section.

Plaintiff Jacob Telles ("Telles") filed this action pursuant to 42 U.S.C. § 1983 seeking damages against a number of individual police officers, Police Chief Carlos Leon ("Leon"), the City of El Paso ("City"), the County of El Paso ("County"), and District Attorney Jaime Esparza ("Esparza"), for violating his rights under the First, Fourth, Fifth, and Fourteenth Amendments as well as for violations of Texas law. He also appears to seeks damages under Texas state law for battery, assault, malicious prosecution, false arrest and imprisonment, intentional infliction of emotional distress, and conspiracy. Telles alleges that all Defendants violated his right to be free from the use of excessive force and unreasonable seizure and his right to due process. He also complains of deliberate indifference by the City, Esparza, and the County to his civil rights in failing to instruct and supervise the police officers and the Assistant District Attorney's involved in this matter.

On December 26, 2001, James Terrell and a number other individuals were attending a Christmas party at the residence of Jacob Telles ("Telles") located at 5925 Via Norte, El Paso, Texas. Starting at approximately 1:48 a.m., various police officers arrived at or near Telles' residence in response to a dispatch indicating that there was a call from a neighbor complaining about a disturbance in the street. The parties dispute whether the police officers were dispatched to or actually arrived at the Telles' residence or instead arrived at a different but nearby address.

Upon arriving at Via Norte, the police officers claim they first approached and searched an individual named Billy Porter. According to the police officers, during this search of Billy Porter, Telles, allegedly intoxicated, approached the police officers in a belligerent and argumentative manner and then, in the course of a discussion, gave the officers permission to enter his residence to check for narcotics and weapons. While holding Telles outside, the officers entered the house and encountered several occupants, some of whom were intoxicated. After securing the house, the officers brought Telles back into his home.

Upon his re-entry into the home, Telles became more aggressive towards the officers and was observed placing himself in a fighting stance as he approached the officers. Telles refused to comply with the officers' orders that he calm down and stand back. Soon after, Telles charged at one of the officers as if he was going to assault him and continued to ignore the orders of the police. At this point, the officers sprayed Telles with OC "pepper" spray for safety reasons. As one of the

officers was placing Telles in custody, Telles struck an officer in the torso. Telles was then arrested for assault and placed inside the patrol car outside. At this point, Telles then began to repeatedly strike the car window. When told to stop this behavior, Telles was able to push open the patrol car door and flee from the vehicle. Telles was chased on foot and apprehended.

Telles was first transported to Thomason hospital by ambulance where he was treated for injuries, which included a wound to the face sustained during his encounter with the officers. Soon after, he was transported to the El Paso Detention Center where he was booked.

Shortly following Telles' arrest, a report regarding the circumstances of the arrest was sent to and reviewed by an assistant district attorney who was on duty, pursuant to the District Attorney's Information Management System ("DIMS"). DIMS has been described as a 24-hour screening process whereby the El Paso District Attorney's office reviews the facts of an arrest with information from the arresting officers and then makes a real-time decision whether to accept or decline a case. That office also sets bond pursuant to a bond schedule approved by the El Paso County Council of Judges.

In the present matter, according to defendants, the DIMS assistant district attorney accepted the case against Telles, recommended a bond of $3,000 pursuant to the bond schedule, and ultimately released Telles after he posted bond later that day.

Telles, along with other witnesses including Terrell, provide a different account of certain portions of the incident. According to Telles, there was no disturbance in the street and the police officers arrived at an address not provided in the dispatch. He claims that he never gave verbal or written permission for the officers to enter his home, despite Officer Mark Telles' contention otherwise. Telles further explains that the police officers were rude and aggressive from the time of their arrival on the scene through the time he was taken to the police station. For example, Telles alleges that he was not aggressive or belligerent towards the officers and denies being intoxicated. He claims that after going back into his home, the officers inside shoved him into the bathroom, slammed his head into the porcelain sink, and sprayed him with pepper spray. After his arrest for assaulting the officer, Telles denies ever striking the patrol car window in an effort to break the window and he denies ever escaping or attempting to escape from the patrol car.

On October 1, 2004, this Court denied Telles' Motion to Recuse as well as his Motion for Declaratory Judgment without prejudice to refiling in compliance with the Court's Standing Orders. On October 8, 2004, Telles filed his Notice of Appeal and on January 25, 2006, the Court of Appeals dismissed Telles' appeal of the motion for declaratory judgment based upon a lack of appellate jurisdiction. They also affirmed this Court's denial of Telles' Motion to Recuse.

## II. DISCUSSION

### A. Standard

A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insuffi-

cient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990). Once the movant carries the initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir.1991).

Summary judgment is required if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. District Attorney Esparza's and the County's Motions for Summary Judgment

The arguments of Telles' attorney, in both his Amended Complaint and Response, are incoherent, disorganized, and nearly indiscernible. The County's Motion is similarly disorganized and provides only a flimsy discussion of applicable law, failing to address even the basic elements of the various sorts of § 1983 claims that Telles appears to allege. It is into this murky realm that the Court must enter to sort out questions regarding the constitutionality of the DIMS program. Given the state of the pleadings, the Court has limited its opinion only to the arguments that it has been able to discern from the filings and rules only on the County's and Espar-

za's Motions for Summary Judgment under the specific facts of this case.

In his Motion, Esparza argues that he is shielded by both qualified immunity and absolute prosecutorial immunity from Telles' claims that the DIMS process violates Texas law and Telles' constitutional rights. County's Mot. for Summ. J. ¶¶ 9–18. Esparza and the County state that Telles has failed to assert any constitutional violations resulting from his processing under DIMS. *Id.* ¶¶ 12, 21–23. With regard to Telles' intentional tort claims, Esparza and the County argue that such claims are barred under the Texas Tort Claims Act. Finally, the County argues that it is shielded by sovereign immunity. *Id.* ¶¶ 20, 37.

Telles essentially responds that the DIMS process violated his Fourth Amendment right to a probable cause determination by a neutral magistrate. Resp. to County's Mot. 6. He argues that Esparza is not entitled to absolute prosecutorial immunity with regard to the DIMS claims because "Esparza was carrying out a *local* policy (DIMS) that he created and implemented." *Id.* at 10 (emphasis in original). He also argues that he should prevail on his § 1983 claims because the DIMS program violates a wide array of Texas laws. Finally, he appears to argue that the County is not entitled to sovereign immunity because the Supreme Court does not afford Eleventh Amendment sovereign immunity to state political subdivisions. *Id.* at 11.

### 1. District Attorney Esparza's qualified immunity

Esparza argues that he is shielded by qualified immunity from Telles' § 1983 claim because Telles failed to assert any constitutional violations. Telles responds by arguing that his rights under the Fourth Amendment were violated because

he was never presented to a magistrate for a determination of probable cause prior to his release on bail, and because he was arrested without a warrant. He also argues that the DIMS program violates Texas criminal procedure law.

The doctrine of qualified immunity serves to shield government officials from liability based on the performance of discretionary functions. *Beltran v. City of El Paso,* 367 F.3d 299, 302–03 (5th Cir.2004); *Thompson v. Upshur County,* 245 F.3d 447, 456 (5th Cir.2001). To establish an entitlement to qualified immunity, a government official must first show that the conduct occurred while he was acting in his official capacity and within the scope of his discretionary authority. *Cronen v. Tex. Dep't of Human Servs.,* 977 F.2d 934, 939 (5th Cir.1992). Once a defendant has properly invoked qualified immunity, the burden rests on the plaintiff to show that the defense does not apply. *Beltran,* 367 F.3d at 303; *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir.2002) (en banc).

In order to show that the defense does not apply, the plaintiff must meet a two-pronged test. First, the plaintiff must show that the allegations, if true, establish a constitutional violation. *Hope v. Pelzer,* 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *McClendon,* 305 F.3d at 322–23. If a plaintiff succeeds in making this showing, he must then show that the constitutional right was "clearly established" at the time of the violation. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. If the official conduct violates a clearly established right, the official is still entitled to qualified immunity if his conduct was objectively reasonable in light of the established legal rules at the time of the alleged violation. *Wallace v. County of Comal,* 400 F.3d 284, 289 (5th Cir.2005); *Rhodes v. Prince,* 2007 WL 431049, at *2 (N.D.Tex. Feb.8, 2007). "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right." *Rhodes,* 2007 WL 431049, at *2 (quoting *Cozzo v. Tangipahoa Parish Council–President Gov't,* 279 F.3d 273, 284 (5th Cir.2002) (internal citations omitted)).

■ It is undisputed that Esparza was acting in his official capacity at the time of the arrest and that his actions were within the scope of his discretionary authority. Thus, Telles must come forward with evidence that the defense does not apply. Telles fails to do so. He has failed to allege a violation of a clearly established constitutional right and he has failed to argue how Esparza's conduct was objectively unreasonable.

The undisputed facts indicate that had Telles not paid the bond set and/or recommended by the assistant district attorney, he could have waited and made an appearance before a magistrate. Instead, Telles chose to pay the bond, most likely to expedite his release, and was in fact released. In other words, and assuming appearance before a magistrate prior to payment or setting of a bond is required, *see, e.g., Gilbert v. State,* 162 Tex.Crim. 290, 284 S.W.2d 906 (App.1955) (discussing timeliness of mandatory appearance before magistrate); *Hicks v. Matthews,* 153 Tex. 177, 266 S.W.2d 846 (1954) (same), Telles had the option to do so and chose otherwise.

■ In addition, Telles has not shown that the Fourth Amendment demands that he receive a magistrate's probable cause determination under the facts of this case. Under the Fourth Amendment, an arrestee must be promptly presented to a neutral magistrate for a determination of probable cause as a prerequisite to an extended restraint on his liberty following

arrest. *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). In *Gerstein,* the Court stated that a probable cause determination "is required only for suspects who suffer restraints on liberty other than the condition that they appear for trial." *Id.* at 125 n. 26, 95 S.Ct. 854. The Court did not limit "extended restraint on liberty" to physical detention. *Id.* at 114, 95 S.Ct. 854. Instead, the Court noted that certain terms of pre-trial release could effect a "significant restraint on liberty." *Id.* The Court specifically cited 18 U.S.C. § 3146 as an example of such terms, though the Court provided no further elaboration. *Id.*

In *Evans v. Ball,* a *Bivens* case challenging an alleged seizure under the Fourth Amendment, the Fifth Circuit reviewed the terms of 18 U.S.C. § 3146 and found that a restraint on liberty implicating the Fourth Amendment includes not only physical detention but also the freedom to travel while on pre-trial release. *Evans v. Ball,* 168 F.3d 856, 861 & n. 5 (5th Cir.1999). Thus, the Fifth Circuit held that the plaintiff was seized under the Fourth Amendment based upon a summons coupled with liberty restrictions including the requirements that the plaintiff seek permission before traveling outside of the state, that he sign a personal recognizance bond, and that he report regularly to pretrial services. *Id.* at 861.

Regarding the timing of the probable cause determination, the Supreme Court in *Gerstein* made it clear that the Constitution does not impose a rigid procedural framework for making the necessary determination; instead, it allows each jurisdiction to comply with the procedural requirement in different ways. *Gerstein,* 420 U.S. at 123, 95 S.Ct. 854. In *County of Riverside v. McLaughlin,* the Court elaborated on the *Gerstein* requirement explaining that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.*" *County of Riverside v. McLaughlin,* 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). However, the Court noted that determinations that take place within the 48 hour time frame might still violate the Fourth Amendment if the arrestee can show that the probable cause determination was unreasonably delayed. *Id.*

In this case, it is undisputed that Telles paid bail and was released on the same day as his initial encounter with the police, well within the 48 hour requirement of *County of Riverside.* Telles has not shown the existence of any facts or made any arguments regarding significant or continuing restraints upon his liberty after his release. Nor has he made arguments or shown facts that his probable cause determination was unreasonably delayed during those hours before he was released. Thus, under the facts of the case, he was not constitutionally entitled to a probable cause determination before a neutral magistrate and he has failed to demonstrate the existence of any Fourth Amendment violation. Accordingly, his § 1983 claim for a violation of his rights under the Fourth Amendment fails.

Based upon the above, Telles has not demonstrated the existence of a constitutional violation. Therefore Esparza is shielded by qualified immunity from Telles' § 1983 claims.

### 2. Esparza's absolute immunity

The Court need not reach Esparza's argument that he is protected by absolute immunity as it has resolved the issues on the basis of qualified immunity.

### 3. Telles' *Monell* claim against the County

■ Though neither the County nor Telles directly address it, a governmental

entity such as El Paso County can only be held liable in an action under § 1983 if there is either an unconstitutional action by official policymakers or a policy or custom that caused the deprivation of a constitutional right. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir.2004). Municipal liability on a claim brought under § 1983 requires proof of three elements: 1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001).

As discussed above, Telles has failed to allege a deprivation of a constitutional right, either by an official policymaker or due to a County policy or custom. Accordingly, his § 1983 claim against the County fails.

### 4. Violations of state law as basis for § 1983 claim

■ Next, Telles claims in his Amended Complaint that the DIMS program violates a variety of Texas laws. It is well settled that violations of state law cannot form the basis of a § 1983 claim. *Giovanni v. Lynn*, 48 F.3d 908, 912–13 (5th Cir. 1995) ("[W]here a liberty or property interest is infringed, the process which is due under the United States Constitution is that measured by the due process clause, not that called for by state regulations. Mere failure to accord the procedural protections called for by state law or regulation does not of itself amount to a denial of due process.") (internal citation omitted); *Nesmith v. Taylor*, 715 F.2d 194,

195 (5th Cir.1983) ("It is fundamental to our federal jurisprudence that state tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right."). Although the DIMS program may violate state law, Telles' state law claims are irrelevant to his § 1983 claim.

### 5. Conspiracy claims

As for Telles' claims of a conspiracy among all of the parties to deprive him of his constitutional rights, since the Court has been unable to discern the presence of any constitutional violations in the pleadings, there can be no conspiracy. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir.1990) (finding that a conspiracy claim is not actionable without an actionable violation of § 1983). Accordingly, Telles' conspiracy claim fails.

### 6. Telles' claims under Texas tort law

The County argues that it is immune from Telles' claims that it committed the torts of malicious prosecution, false arrest and imprisonment, assault, battery, and conspiracy under Texas law. The Court has reviewed the Amended Complaint and has been unable to discern such claims against the County. Nevertheless, to the extent that Telles has expressed any such intentional state tort law claims, such claims fail.

■ Under Texas law, two statutory provisions are relevant to a determination of whether Texas has waived its sovereign immunity to suit in Texas courts. The first statute waives sovereign immunity, while the second stands as an exception to that waiver. Section 101.021(2) of the Texas Civil Practice Management and Remedies Code provides that "a governmental unit [1] in the state is liable for ... (2)

---

1. A "governmental unit" is defined, *inter alia*, as "this state and all the several agencies of

personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM.CODE ANN. § 101.021. Section 101.057 of the same Code, the exception to the waiver, provides that "[t]his chapter does not apply to a claim ... arising out of assault, battery, false imprisonment, or any other intentional tort." *Id.* § 101.057.

Since Telles' claims of of malicious prosecution, false arrest and imprisonment, assault, battery, and conspiracy are all intentional torts; therefore, under section 101.057, the County is immune from suit for these intentional torts.

### C. City's Motion for Summary Judgment

The City has raised a number of objections to Telles' summary judgment evidence. The Court will address these challenges first, followed by a discussion of the City's Motion for Summary Judgment.

### 1. City of El Paso's objections to Telles' summary judgment evidence

The City has raised eight objections to Telles' summary judgment evidence including challenges to Exhibits 2, 3, 4, 11, 16, 18, 20, and 27 on a variety of grounds. These objections are **OVERRULED** as moot because the Court did not rely on the challenged evidence in deciding the Motion. *See RLI Ins. Co. v. Phila. Indem. Ins. Co.,* 421 F.Supp.2d 956, 959 n. 3 (N.D.Tex.2006) (overruling defendants' objections to plaintiff's summary judgment

evidence because the court did not rely on that evidence in deciding the motion); *Nat'l Propane Gas Ass'n v. United States Dep't of Transp.,* 43 F.Supp.2d 665, 673 n. 7 (N.D.Tex.1999) (same).

Though the Court did not rely on the affidavit of expert George DeAngelis in Exhibit 27 in deciding the Motion, the Court does refer to it in its Opinion below. Therefore, the Court will consider the City's objections.

■ With regard to this Exhibit, the City argues that the Exhibit "is not sworn and fails to meet the elements of an affidavit[,]" does not establish the witness's qualifications as an expert as required under Federal Rule of Evidence 702, and is based on hearsay. City's Objections to Pl.'s Summ. J. Evid. 2–3. It is settled in the Fifth Circuit that unsworn affidavits are insufficient to raise a fact issue precluding summary judgment. *Nissho–Iwai Am. Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir.1988). In addition, in order to qualify as an expert, a witness must possess such knowledge or experience to make it appear that his opinion will likely assist the trier of fact in deciding the case. *United States v. Hicks,* 389 F.3d 514, 524 (2004) (citing *United States v. Bourgeois,* 950 F.2d 980, 987 (5th Cir.1992)). Under the federal rules experts may rely upon hearsay evidence in forming their opinions. *First Nat'l Bank of Louisville v. Lustig,* 96 F.3d 1554, 1576 (5th Cir.1996). The evidence upon which the expert bases his opinion need not be admissible so long as it is of a type reasonably relied upon by experts in the particular field. FED.R.EVID. 703;

---

government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts," "an emergency service organization," or "any

other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution." TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3) (Vernon 2006).

*Marcel v. Placid Oil Co.,* 11 F.3d 563, 567 n. 6 (5th Cir.1994).

The DeAngelis' affidavit included with Telles' pleadings is signed and sworn; thus, the Court **OVERRULES** this part of the City's objection. Telles, however, has failed to establish DeAngelis' qualification as an expert. DeAngelis has not provided any information in his affidavit explaining his experience, training, or other qualification. Telles has failed to lay an appropriate foundation to demonstrate to the Court that DeAngelis' opinion would assist the trier of fact in deciding the case. Accordingly, the Court **SUSTAINS** the City's objection on these grounds. The report is not admissible as an expert report for purposes of summary judgment.

### 2. The City's Motion for Summary Judgment

Telles argues for municipal liability based on two theories: (1) a *Monell* claim of an improper custom or policy, and (2) a claim of failure to train. With regard to the City's liability based upon an improper custom or policy, Telles states that the City had a policy to bypass a magistrate, depriving Telles of his right to a magistrate's determination of probable cause in violation of Texas law.

With regard to the failure to train claim, Telles states in his Amended Complaint that the errant policy is the City's failure to instruct their police officers to prevent events including "police abuse, the warrantless or false arrest and imprisonment, violations of the Fourth Amendment, falsifying records, omitting facts, false swearing, the swearing to charges without probable cause, and the failure to take Plaintiff Telles or Terrell before a magistrate to include the setting of a bond by a judge or a magistrate, the failure of which was a proximate cause of Plaintiff Telles' injuries." Am. Compl. ¶ 353. In its Motion, the City argues that it is entitled to summary judgment on Telles' § 1983 DIMS claims because there is no evidence of municipal liability as Telles has failed to establish the existence of a constitutional violation and he has provided no facts to support the elements of his *Monell* claim and his inadequate training claim. City's Mot. for Summ. J. ¶¶ 9–23. Finally, the City argues that the Court should not grant Telles' prayer for declaratory judgment and injunctive relief as there is no immediate danger of direct injury. City's Mot. for Summ. J. ¶¶ 4, 9.

Telles responds that he had a First Amendment right to question the police officers without risking arrest, that he never had the opportunity to appear before a magistrate and that the officers created exigent circumstances and falsified records to justify their actions. Resp. to City's Mot. ¶ 10. He claims that DIMS violated his clearly established rights, that he was subject to an illegal search and seizure, excessive force, a false arrest, and that, under DIMS, he was deprived of his constitutional right to appear before a magistrate and to be free from a warrantless arrest. *Id.* ¶ 12

#### a. *Monell* claims against the City

Under 42 U.S.C. § 1983, a municipality such as the City of El Paso can be held liable if there is a policy or custom that caused the deprivation of a constitutional right. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018; *Johnson,* 379 F.3d at 309. A *Monell* claim requires proof of three elements: 1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018; *Piotrowski,* 237 F.3d at 578. Municipal policy is normally found in "duly promulgated policy statements, ordinances or regulations" while a custom is "a persistent, widespread practice of City officials or em-

ployees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski,* 237 F.3d at 579.

The City argues that the officers had probable cause to arrest Telles, and thus any attempt by Telles to claim a Fourth Amendment false arrest and to impute liability to the City must fail. With regard to Telles' Due Process excessive force claim, the City argues that Telles fails to allege any facts tending to show the existence of a municipal policy or custom authorizing his alleged mistreatment by the officers. With regard to the magistrate claim, the City argues that § 1983 claims based upon violations of Texas law must fail because violations of state law cannot form the basis for a claim under § 1983. Additionally, the City argues that under the Fourth Amendment, Telles has no right to a probable cause determination prior to booking and thus there is no basis for his § 1983 claim.

Telles appears to respond that the City is liable because the officers falsified documents and fabricated evidence regarding his arrest in violation of his right to due process under the Fourteenth Amendment. He also argues that the City had a policy, which prevented him from receiving a determination of probable cause by a neutral magistrate as required by the United States Constitution and Texas law.

■ A city can be sued and subjected to monetary damages and injunctive relief under § 1983 only if its official policy or custom caused plaintiff to be deprived of a federally protected right. *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). A city cannot be held liable for civil rights violations under a theory of *respondeat superior* or vicarious liability. *Id.; Monell,* 436 U.S. at 694, 98 S.Ct. 2018. To support a claim based upon the existence of a custom

or policy, Telles must plead facts that show: (1) a policy or custom existed; (2) governmental policymakers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 532–33 (5th Cir.1996).

### 1. Falsification and fabrication of evidence

■ Telles' claims of falsification and fabrication of evidence fail. In § 1983 claims against a municipality, the claimant must plead specific facts and not merely conclusory allegations. *Rodriguez v. Avita,* 871 F.2d 552, 554 (5th Cir.1989), *cert. denied,* 493 U.S. 854, 110 S.Ct. 156, 107 L.Ed.2d 114 (1989). A claimant must show that the municipality's governing body or official delegated with policy making authority had actual or constructive knowledge of the policy which caused the violation. *Id.*

Telles does not provide any facts to show the existence of a custom or policy of the City which resulted in his being deprived of his rights under the Constitution. He does not provide any facts to show that policymakers knew of the custom or policy nor does he address how the custom or policy was the moving force behind the violation. Rather, he simply skips over three of the four elements on this basis for his § 1983 claim against the City and premises liability upon conclusory allegations of a cover-up. As Telles has failed to adduce facts to support his claim of falsification of evidence or to show that the City had a custom or policy allowing this, his claims fail.

### 2. False arrest

As with the falsification of evidence claim, Telles' false arrest claim must fail.

Telles fails to address the existence of a City custom or policy, that policymakers knew of the custom or policy, and that such custom or policy was the moving force behind the violation. Accordingly, Telles has no § 1983 claim on this ground.

### 3. Excessive force

As with the false arrest claim, Telles' excessive force claim must fail. Telles fails to address the existence of a City custom or policy, that policymakers knew of the custom or policy, and that such custom or policy was the moving force behind the violation. Accordingly, Telles can base no § 1983 claim on this ground.

### 4. Warrantless entry

As with the excessive force claim, Telles' warrantless entry claim must fail. Telles has not produced evidence of the existence of a City custom or policy, that policymakers knew of the custom or policy, and that such custom or policy was the moving force behind the violation. Accordingly, Telles can base no § 1983 claim on this ground.

### 5. State law as basis for *Monell* claim

■■■ Telles' claims of a violation of a number of articles of the Texas Code of Criminal Procedure requiring an arrestee to be presented to a magistrate for a probable cause determination and for bail setting also fail. It is well-settled that violations of state law provide no basis for a § 1983 claim. *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir.2002) (citing *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989)). While a state may impose greater restrictions upon arrests, their citizens do not thereby obtain greater federal rights. *Fields*, 922 F.2d at 1189. Telles' claims of violations of the Texas Code of Criminal Procedure obviously arise under state law. Thus, Telles cannot base a § 1983 claim on these grounds and such claims fail.

### 6. Fourth Amendment

In addition, Telles has not shown that the Fourth Amendment demands that he receive a magistrate's probable cause determination under the facts of this case. As stated above, it is undisputed that Telles paid bail and was released on the same day as his initial encounter with the police, well within the 48 hour requirement of *County of Riverside*. Telles has not shown the existence of any facts or made any arguments regarding significant or continuing restraints upon his liberty after his release. Nor has he made arguments or shown facts that his probable cause determination was unreasonably delayed during those hours before he was released. Thus, under the facts of the case, he was not constitutionally entitled to a probable cause determination before a neutral magistrate and he has failed to demonstrate the existence of any Fourth Amendment violation. His § 1983 claim for a violation of his rights under the Fourth Amendment fails.

### b. Inadequate training claims against the City

In his Amended Complaint, Telles claims that the City "owed a duty to supervise or train the EPPD officers and to take steps to prevent events such as occurred here, to wit, the police abuse, the warrantless or false arrest and imprisonment, violations of the 4th Amendment, falsifying records, omitting facts, false swearing, and the swearing to charges without probable cause, and the failure to take Plaintiff Telles or Terrell before a magistrate to include the setting of a bond by a judge or magistrate, the failure of which was a proximate cause of Plaintiff Telles' injuries." Am. Compl. ¶ 353. The City argues that Telles has failed to produce any evidence, only bare allegations, to support the elements of his inadequate training

claim. Telles' only response to this contention is "EPPD officers are improperly trained under DIMS to by-pass a magistrate. EPPD officers are placed in 'recurring situations that present an obvious potential for violation of constitutional rights and the need for additional or different police training [or supervision].'" Resp. to City's Mot. ¶ 16 (no citation for internal quotation in original).

■■■ To prevail on a failure to train claim, plaintiff must demonstrate that: (1) the training procedures of the municipality were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused the plaintiff's injury. *Baker,* 75 F.3d at 200 (citing *Harris,* 489 U.S. at 385–87, 109 S.Ct. 1197). Plaintiff must show more than that "an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct [because] . . . [s]uch a claim could be made about almost any encounter resulting in injury. . . ." *Harris,* 489 U.S. at 391, 109 S.Ct. 1197.

The Court has already ruled that the DeAngelis affidavit is inadmissible as Telles has failed to lay a proper foundation regarding DeAngelis' qualifications as an expert. Telles has provided no other evidence to satisfy the elements of a failure to train or inadequate training claim. Therefore, this claim fails. But, even if the Court were to have found the DeAngelis affidavit to be admissible, Telles' claims would still fail because that affidavit contains nothing more than a slew of conclusory statements regarding the competency of the El Paso Police Department and the sufficiency of its training.

### c. State law claims

The City argues that it cannot be held liable for Telles' state law claims as they are all intentional torts and the state has not waived sovereign immunity for intentional torts. City's Mot. for Summ. J. ¶¶ 26–29. Telles argues that, in fact, "Plaintiff is not suing the City of El Paso under the Texas Tort Claim Act. Plaintiff is suing for damages under Claims [sic] of false arrest, false imprisonment, and malicious prosecution involves the guarantees of the U.S. Const. amends. IV and XIV when the individual complains of an arrest, detention, and prosecution without probable cause." Resp. to City's Mot. ¶ 17. The City and this Court had assumed that Telles was asserting state law claims in addition to his § 1983 claims based upon the constitutional violations asserted in his *Monell* claim above. Apparently, from what Telles represented above, that is not the case so the Court will not consider such state law claims. Even if the Court were to reach such claims, despite Plaintiff's own objections, the claims would fail.

Under Texas law, two statutory provisions are relevant to a determination of whether Texas has waived its sovereign immunity to suit in Texas courts. The first statute waives sovereign immunity, while the second stands as an exception to that waiver. Section 101.021(2) of the Texas Civil Practice Management and Remedies Code provides that "a governmental unit in the state is liable for . . . (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem.Code Ann. § 101.021. Section 101.057 of the same Code, the exception to the waiver, provides that "[t]his chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort." *Id.* § 101.057.

Telles' claims for false arrest and imprisonment, malicious prosecution, assault and battery, and conspiracy are all intentional torts. Thus, under section 101.057, the City is immune from suit for these intentional torts.

Finally, contrary to Telles' urging, the Court is not required to rule on the facial constitutionality of the DIMS program in deciding the case. Rather, the Court has reviewed the facts and arguments presented by the parties in this case and has determined that Telles has failed to sustain his burden to survive summary judgment. Though there may be inequities in DIMS, these issues are not before this Court in this § 1983 action.

### D. Police Chief Carlos Leon's Motion for Summary Judgment

#### 1. Motion to Strike

The City has raised eight objections to Telles' summary judgment evidence including challenges to Exhibits 2, 4, 7, 16, and 23 on a variety of grounds. These objections are **OVERRULED** as moot because the Court did not rely on the challenged evidence in deciding the Motion. *See RLI Ins. Co.*, 421 F.Supp.2d at 959 n. 3; *Nat'l Propane Gas Ass'n*, 43 F.Supp.2d at 673 n. 7

#### 2. Leon's Motion for Summary Judgment

In his Motion, Leon asserts that he cannot be held vicariously liable for any violations that took place during the incident in question. Leon's Mot. for Summ. J. ¶ 27. He also argues that he is shielded by qualified immunity from Telles' claims and that Telles has failed to produce facts to support his failure to train and *Monell* claims against Leon. *Id.* ¶¶ 9, 22, 26. Telles responds that the El Paso police violated his First Amendment right to free speech, and that he was "deprived by the police of being taken before a neutral and

detached magistrate where he would have had an opportunity for the magistrate view [sic] Telles and for Telles to talk to the magistrate." Resp. to Leon's Mot. ¶ 9. He claims that DIMS violates clearly established constitutional rights and that Leon was deliberately indifferent to this issue. *Id.* ¶¶ 8, 10. Telles, however, does not respond to Leon's argument that Telles cannot succeed on his failure to train and *Monell* claims.

At the outset, the Court notes that the constitutional claims against Leon are nearly identical to Telles' failed claims raised against the City. These relate to DIMS and the alleged constitutional violations and violations of Texas criminal procedure law. As the Court has already held, Telles DIMS claims fail based upon the facts of this case and the arguments presented. Accordingly, there can be no claim against Leon for the use of DIMS.

However, it is still possible that Telles could prevail on a failure to train claim related to how the individual police officers performed during the investigation and arrest of Telles. Even though Telles failed to address those matters in his Response to Leon's Motion, the Court, nevertheless, reviews those claims below for the sake of completeness.

#### a. Failure to train or supervise

In a § 1983 action, supervisory officials cannot be held vicariously liable for the actions of their subordinates. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Rather, "the misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor." *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir.1997). Thus, a court will hold supervisory personnel liable when "(1) the [supervisor] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged

failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson,* 245 F.3d at 459 (citations omitted).

It is clear from the facts that Leon did not affirmatively participate in the Telles' arrest or use force against him. Thus, he cannot be held liable for any direct involvement in the alleged constitutional violations. And as stated above, he cannot be held vicariously liable for the actions of the officers involved in the arrest and investigation. Telles' only remaining means of holding Leon liable would be to demonstrate a question of fact regarding a failure to supervise or train which constituted a deliberate indifference to Telles' constitutional rights. Telles has failed to do so in his pleadings.

Telles has failed to present any proof of inadequate training or a deliberate indifference to constitutional rights in adopting a training policy. He has failed to show the existence of causation between such a policy and the resulting violations. He does not even address the matter in his Response. Thus, Telles's failure to train claim fails. Accordingly, Leon's motion for summary judgment is **GRANTED** as to all claims.

## III. CONCLUSION

Accordingly, the County's Motion for Summary Judgment (Doc. No. 170) is **GRANTED,** the City's Motion for Summary Judgment (Doc. No. 149) is **GRANTED,** and Defendant Carlos Leon's Motion for Summary Judgment (Doc. No. 159) is **GRANTED.**

**SO ORDERED.**