United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 14, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 04-50280
_____

MONICA M. WALLACE; PATRICIA KNISS

Plaintiffs-Appellees,

versus

COUNTY OF COMAL, STATE OF TEXAS; ET AL.

Defendants,

DANNY SCHEEL, in his individual capacity; MOE SCHWAB, in his
individual capacity; TOM HORNSETH, in his individual capacity

Defendants-Appellants.

Appeal from the United States District Court
for the Western District of Texas

Before GARZA, STEWART and CLEMENT Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Monica Wallace and Patricia Kniss filed suit against the County of Comal, Texas, its County

Engineer Tom Hornseth, County Judge Danny Scheel, and Commissioner Moe Schwab, in their

individual capacities for violating their First Amendment rights under 42 U.S.C. § 1983. Hornseth,

Scheel and Schwab now bring this interlocutory appeal of the district court's denial of their motion

for summary judgment on the basis of qualified immunity. The defendants also request that we

reverse the district court's order granting plaintiffs' motion to amend their complaint to include

individual defendants previously dismissed in this case.

I

In reviewing a denial of summary judgment on the basis of qualified immunity, we are obligated to "take, as given, the [following] facts that the district court assumed when it denied summary judgment." *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472 (5th Cir. 1996) (quoting *Johnson v. Jones*, 515 U.S. 304, 319 (1995)).

Wallace and Kniss were employed by the Comal County Environmental Health Department ("Department") as health inspectors for sixteen and seven years respectively. They were responsible for ensuring that septic systems were properly installed and in compliance with the standards established by the Texas Natural Resources Conservation Commission ("TNRCC"). During their employment, Kniss always received at least an "Acceptable" job evaluation and Wallace frequently received merit raises based on her "Commendable" performance rating.

During this period, county commissioners also received numerous complaints from installers, designers and home builders about the plaintiffs. Specifically, they claimed the inspectors were creating severe financial burdens by being "too strict" in enforcing the standards set out by the TNRCC. The builders argued that Kniss and Wallace's "hard-nosed" approach would result in their going out of business.

In 1996, Wallace, who at the time was the head of the Department, was demoted to Field Operations Manager. The Department was consolidated with the Office of the County Engineer and placed under the leadership of Hornseth. According to the defendants, the consolidation was necessary to ensure greater efficiency and enhance public service.

One year later, Hornseth suspended Wallace's managerial responsibilities. Human Resources

2

Chief, Tom Collette, warned the commissioners against demoting Wallace without written support. Nevertheless, the suspension soon became a permanent demotion and Wallace was made a health inspector. She was replaced by her receptionist Barbara Ritzen who had no field experience or training as a health inspector. Hornseth gave no notice to Wallace and informed her that her demotion was due to her failure to cooperate. Wallace, who received a pay cut, appealed the demotion to the commissioners who denied the appeal in a unanimous vote.

After the demotion, Wallace and Kniss continued to perform their duties as inspectors and spoke regularly with Hornseth about various TNRCC rule violations. Their concerns were frequently rebuffed by Hornseth who often responded with anger and hostility. They were told not to speak to outside officials and to keep their problems "in-house." Subsequently, Wallace sent a fax to the TNRCC stating that she was being improperly overruled on violations of the TNRCC standards.

Subsequently, county commissioners held a meeting with Collette in Scheel's office. Collette presented a draft document titled "HR View" which outlined how Wallace's situation would be viewed by individuals outside the Department. Specifically, the document noted that Wallace "adheres to the rules laid down by the TNRCC regarding septic tank installation. By doing so, she has incur[red] the wrath of shoddy installers and some homeowners who like to take shortcuts. This prompts calls to the Commissioner's Court. Since the callers are 'constituents,' some members of the Commissioner's Court would like to see Monica [Wallace] relax a little bit on rigid rule enforcement."

Soon after, Hornseth made a tentative decision to fire Wallace and Kniss. After discussing his decision with the commissioners, Hornseth terminated Wallace and Kniss from their positions. While no specific warning had been given to the plaintiffs, Hornseth had told Wallace on numerous

3

occasions that Scheel wanted her terminated. Collette, who had informed Scheel that he would support Wallace in any subsequent litigation, was suspended that same day and later terminated.

II

Plaintiffs filed suit against Hornseth, Scheel, Schwab, County Commissioners Jack Dawson, Jay Milikin, and Christina Zamora, all in their official and individual capacities, and against the County of Comal. The district court judge granted, in part, defendants' first motion for summary judgment and dismissed all claims against the County Judge and commissioners. The district court held that the defendants were entitled to qualified immunity because there was no "evidence that the [defendants] took adverse employment actions against the Plaintiffs." The district court, however, allowed the plaintiffs to continue their case against Hornseth because "the reasonableness of [his] actions cannot be determined."[1]

Eight months later, plaintiffs requested leave to amend the complaint in order to reassert their claims against Commissioner Schwab and Judge Scheel. In support of their claims, plaintiffs cited to new evidence, gathered through discovery, showing that Scheel and Schwab, along with Hornseth, had played an extensive role in the adverse employment action against Wallace and Kniss. Specifically, plaintiffs proffered deposition testimony from Scheel, Schwab, and Hornseth indicating that Hornseth had discussed with them the possibility of terminating or disciplining Wallace and Kniss prior to the actual termination. Plaintiffs also presented Collette's deposition testimony detailing his meeting with the commissioners in Scheel's chambers. Further evidence presented showed that both Scheel and Schwab were well aware of and concerned about the numerous complaints being made by constituents regarding plaintiffs' stringent adherence to the TNRCC rules. As a result, the district

---

[1]The county was also dismissed from suit on a separate motion for summary judgment.

court granted plaintiffs' motion to amend the complaint to add the two previously dismissed defendants.

Subsequently, defendants filed a second motion for summary judgment arguing that plaintiffs were terminated for poor performance such as failing to answer phones, refusing to wear uniforms, failing to use the front door, moving furniture, and for making comments to the TNRCC which "were wrong or unnecessary and confused and delayed the permitting process." The district court denied the motion, finding that there was a "genuine issue of material fact as to whether Plaintiffs' speech was a motivating factor in their termination." The district court also denied the request for qualified immunity, holding that the defendants had "acted objectively unreasonably in violating Plaintiffs' rights as outlined by clearly established law" because they "had ample information about Plaintiffs' efforts of enforcement of TNRCC rules and based their decision on what they knew about [their] aggressive enforcement efforts."

### III

Defendants contend that the summary judgment evidence presented to the district court shows that they did not violate plaintiffs' First Amendment rights and that, as a result, they are entitled to qualified immunity for their actions. A "district court's order denying a defendant's motion for summary judgment [is] an immediately appealable . . . 'final judgment' . . . where (1) the defendant was a public official asserting a defense of 'qualified immunity,' and (2) the issue appealed concerned, not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of 'clearly established' law." *Jones*, 515 U.S. at 311 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

A denial of summary judgment based on qualified immunity is reviewed *de novo*. *Spivey v.*

5

*Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Boston Old Colony Ins. Co. v. Tiner Assocs., Inc.*, 288 F.3d 222, 227 (5th Cir. 2002). In determining whether summary judgment is appropriate, we generally view the evidence and "all factual inferences from that evidence in the light most favorable to the party opposing the motion and all reasonable doubts about the facts are resolved in favor of the nonmoving litigant." *Id*. However, in an interlocutory appeal based on qualified immunity, a defendant "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Jones*, 515 U.S. at 319-320. Thus, we are required "instead [to] consider whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment" *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc).[2]

The doctrine of qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis is a two-step inquiry. First, a court must decide whether the plaintiffs' allegations, if true, establish a violation of a clearly established right. *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (en banc). Second, if the plaintiffs have alleged a violation, the court must decide whether the conduct was objectively reasonable in light of

---

[2]We may, however, review the record "[w]hen the district court fails to set forth the factual disputes that preclude granting of summary judgment . . . . In this case, however, the district court wrote a detailed opinion that carefully identified those factual disputes that prevented summary judgment." *Kinney*, 367 F.3d at 348.

6

clearly established law at the time of the incident. *Id*. Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Id.*

A

A public employee's allegations must survive a three-part test in order to state a violation of the First Amendment. "First, the relevant speech must involve a matter of public concern. Second, her interest in commenting on the matter of public concern must outweigh her employer's interest in promoting efficiency. And third, her protected speech must have motivated her public employer's decision to fire her." *Warnock v. Pecos County, Tex.*, 116 F.3d 776, 780 (5th Cir. 1997). Defendants argue that plaintiffs' speech was not a matter of public concern because "the content of the speech in this case is simply routine comments about how those [environmental] rules are to be applied in relation to specific permits. Consulting with TNRCC was a normal part of the job for the Comal County Environmental Health Department as a whole." However, Wallace's fax to the TNRCC was more then a just routine communication )) she specifically stated that members of the County were purposefully ignoring health violations in order to appease installers and builders of septic tanks. As we have already held "[t]here is perhaps no subset of matters of public concern more important than bringing official misconduct to light." *Davis v. Ector County, Tex.*, 40 F.3d 777, 782 (5th Cir. 1994). *See also Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1051 (5th Cir. 1996) (holding that "speech made in the role as employee" can be of public concern when it "involv[es] the report of corruption or wrongdoing to higher authorities.").

Defendants also contend that even if plaintiffs' speech was a matter of public concern, the district court erred in concluding that this speech outweighed the "County's legitimate interests in the

7

efficient provision of public services." Under the Supreme Court's *Pickering* test, the court is required to look at whether the speech "(1) was likely to generate controversy and disruption, (2) impeded the department's general performance and operation, and (3) affected working relationships necessary to the department's proper functioning." *Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 192 (5th Cir. 1988) (citing *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)).

Because this is an interlocutory review of a denial of summary judgment based on qualified immunity, our review here is limited to "whether the district court committed legal error in balancing the interests supported by the summary judgment record, viewing the record in the light most favorable to the non-movants." *Kinney*, 367 F.3d at 360. The defendants contend that the district court committed error by focusing only on the role of the plaintiffs as health inspectors instead of their specific speech and by failing to evaluate and take into account the defendants' interests in ensuring that its health inspectors "do not take up valuable time and resources by unilaterally contacting the TNRCC without coordinating with their supervisors." Plaintiffs argue that their actions were in response to county officials' refusal to enforce regulations designed to protect the public from polluted underground water sources that may result from improperly installed septic systems. While defendants arguably have a need to ensure health inspectors coordinate with supervisors before contacting state officials, that need cannot be paramount when the health and safety of the public is at stake. As we properly noted in *Warnock*, defendants "may not rely on the county's interest in an efficient workplace" if the plaintiffs' allegations of official misconduct are true. 116 F.3d at 781; *see also*, *Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1270 (5th Cir. 1992) (holding that the university health center's interest in maintaining a police force that is free of sexual

8

intimidation outweighs any interest in departmental efficiency and harmony.").[3] Thus, taking the facts in the light most favorable to the plaintiffs, we agree with the district court's assessment that there is a genuine issue of material fact concerning whether plaintiffs' speech outweighs the county's need for departmental efficiency and coordination.

B

Defendants also seek to overturn the district court's holding under the second prong of the qualified immunity analysis that requires the court to decide whether the defendant's conduct was objectively reasonable in light of clearly established law at the time of the incident. *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 279 (5th Cir. 2003). "The law in force at the time of the violation must outline the contours of the rights allegedly violated." *Warnock*, 116 F.3d at 781. Defendants cite six cases to support their contention that the law was unclear at the time that the plaintiffs were terminated in 1999. However, each of these cases clearly state that "speech by a government employee is protected under the First Amendment . . . [if] the speech [is] on a matter of public concern, and the employee's interest in expressing herself on this matter must be outweighed by any injury the speech could cause to the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Waters v. Churchill*, 511 U.S. 661, 668

---

[3]Defendants briefly argue that the district court erred in finding that Scheel and Schwab could be held liable because Hornseth was the final decision maker and there was no allegation of a conspiracy between the three officials. However, the district court explicitly held that "Plaintiffs have pled sufficient facts to show a genuine issue of fact as to the causation between both Schwab and Scheel's actions and Plaintiffs' termination." Viewing the evidence in the light most favorable to the plaintiffs, we agree that the evidence was legally sufficient to create a question of material fact as to whether Scheel and Schwab were directly involved in plaintiffs' adverse employment action. *See Kinney*, 367 F.3d at 348.

(1994).[4] More importantly, all six cases are legally distinguishable from the issues in this appeal. For example, *Gillum* involved an "employee embroiled in personal employment disputes making statements that were not of public concern." 3 F.3d at 121. Similarly, in *Connick*, the Supreme Court held that plaintiff's speech regarding her "dissatisfaction with a transfer" was not a matter of public concern because she did not "seek to bring to light actual or potential wrongdoing or breach of public trust." 461 U.S. at 148. *See also, Terrell*, 792 F.2d. at 1362 (holding that defendant did not violate plaintiff's First Amendment rights because the "public employee [spoke] not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest."); and *Noyola*, 846 F.2d at 1024 (holding that plaintiff's "airing of an internal grievance with his supervisor" was not a matter of public concern.).

Defendants' citation to *McAdams* is also inapplicable for different reasons. *McAdams* involved a plaintiff who alleged that he had been fired by his government employer because he made statements that the county officials had exceeded their legal authority. 798 F.2d at 844. We affirmed the district court's decision to grant a judgment notwithstanding the jury verdict because the record showed that the plaintiff "was not fired for voicing his specific criticisms of the Board, but because he refused to comply with the Board's requests." *Id*. at 846. Similarly, there are allegations here that the plaintiffs were terminated because they failed to obey orders. However, at this stage we are obligated, unlike the court in *McAdams* where a jury trial had already been completed, to accept all facts in the light most favorable to the plaintiffs.

---

[4]The other five cases are *McAdams v. Matagorda County*, 798 F.2d 842 (5th Cir. 1986), *Noyola v. Tex. Dept. of Human Resources*, 846 F.2d 1021 (5th Cir. 1988), *Connick v. Myers*, 461 U.S. 138 (1983), *Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360 (5th Cir. 1986), *Gillum v. City of Kerrville*, 3 F.3d 117 (5th Cir. 1993).

In contrast, plaintiffs cite to *Warnock* and *Wilson* which were decided before the plaintiffs were terminated and are directly on point. In both cases, we explicitly held that public employees may not be terminated in retaliation for speaking out against government misconduct. *Warnock*, 116 F.3d at 780-82; *Wilson*, 973 F.2d at 1269-71. Accordingly, the law was clearly established at the time plaintiffs were fired.

## IV

Defendants have also requested that this court reverse the district court's order allowing plaintiffs to amend the complaint to rejoin Scheel and Schwab as defendants in this case. Ordinarily, an order granting leave to amend "is not an appealable order, since no final judgment has been entered." *Levy v. SEC*, 405 F.2d 484, 486 (5th Cir. 1968). However, "[i]n the interest of judicial economy, this court may exercise its discretion to consider under pendant appellate jurisdiction claims that are closely related to the issue properly before [the court]." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996). The exercise of this jurisdiction is only "proper in *rare and unique circumstances* where a final appealable order is 'inextricably intertwined' with an unappealable order or where review of the unappealable order is necessary to ensure meaningful review of the appealable order." *Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 453 (5th Cir. 1998) (emphasis added).

Defendants' initial brief fails to raise this issue adequately. No mention is made of this court's pendant jurisdiction over this matter and defendants do not assert that the district court's order granting plaintiffs leave to amend the complaint is "inextricably intertwined" with or "necessary to ensure meaningful review" of the denial of summary judgment on the basis of qualified immunity. These arguments, supported by relevant caselaw, are made for the first time in defendants' reply brief. Since we do not consider issues raised for the first time in a reply brief, this matter is waived. *City*

11

*of Abilene v. United States Envtl. Prot. Agency*, 325 F.3d 657, 661 n. 1 (5th Cir. 2003).


V

Defendants have failed to show that the district court erred in denying them qualified immunity for their alleged violation of plaintiffs' constitutional rights.  Accordingly, we DISMISS defendants' appeal.