# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 19, 2007

Charles R. Fulbruge III
Clerk

No. 06-60885

DONALD E HARRIS

Plaintiff-Appellee

v.

GEORGE PAYNE, Harrison County Sheriff, Individually and in His Official
Capacity as Sheriff of Harrison County, Mississippi

Defendant-Appellant

Consolidated with
No. 06-60967

DONALD E HARRIS

Plaintiff-Appellant

v.

HARRISON COUNTY MISSISSIPPI; SHARON WALDRUP; JAMES ZUGG;
RHONDALYN ROGERS

Defendants-Appellees

Appeals from the United States District Court
for the Southern District of Mississippi
USDC No. 2:03-CV-604

Before DENNIS, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Before the court are consolidated appeals regarding the liability of a county and several of its employees for the erroneous four-month incarceration of Plaintiff Donald E. Harris ("Harris"). Although it is clear that Harris should never have been incarcerated, there is no evidence that the actions of the individual defendants amounted to more than negligence. As a result, Harris cannot establish a constitutional violation, and Mississippi law bars his tort claims. Consequently, we AFFIRM in part and REVERSE in part.

## I. FACTUAL BACKGROUND

On September 28, 2002, Harris was arrested in Forrest County, Mississippi, on a felony charge for driving under the influence. Harris posted bond after spending approximately three days in jail. However, before releasing him, the Forrest County Sheriff's Office contacted the Harrison County Sheriff's Office to find out if Harrison County wanted to place a hold on Harris. It seems a grand jury in Harrison County had indicted a "Donald Harris" for shoplifting, and an alias capias warrant had been issued for his arrest. In response to Forrest County's inquiry, Jeannie Carlisle ("Carlisle"), an employee in the Harrison County Sheriff's Office, faxed a letter and the alias capias warrant to Forrest County on September 30, 2002, confirming the detainer on Harris. The letter identified "Donald Harris" as a black male and listed his social security number and date of birth. Harris is a white male with a different social security number and date of birth.

That same day, Harrison County Prisoner Transport Deputies James Zugg ("Zugg") and Sharon Waldrop ("Waldrop"), who are Defendants-Appellees in this case, were in route to Harrison County after picking up another inmate in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Rankin County. The Harrison County Adult Detention Center ("HCADC") contacted Zugg and Waldrop by cell phone and instructed them to pick up Harris from the Forrest County jail. Typically, the HCADC would provide Zugg and Waldrop with paperwork identifying the individual they were to pick up; however, because Zugg and Waldrop were already on the road, the HCADC was unable to fax the paperwork to them.

When Zugg and Waldrop arrived at the Forrest County jail, Waldrop explained that they did not have any paperwork on Harris. A Forrest County employee informed her that Forrest County had received all the necessary paperwork. Zugg then retrieved Harris and placed him in handcuffs. Harris protested once to Zugg and Waldrop that they were detaining the wrong person, and Zugg told Harris to address the matter with the HCADC booking officer. Zugg and Waldrop turned Harris over to the booking officer upon arrival at the HCADC, but Harris made no further protest at that time.

Normal procedure at the HCADC called for Defendant-Appellee Deputy Rhondalyn Rogers ("Rogers"), an inmate records clerk, to receive advance notice of an inmate's arrival. Rogers would then create a Uniform Custody Report ("Report") for the inmate using the biographical information from the indictment, warrant, and other paperwork. After the inmate was booked, she would compare the information in the Report to the information entered into the computer by the booking officer. In such circumstances, the discrepancies in Harris's information would have been apparent, as the Report would have indicated that Harris was black based on his paperwork while the booking officer would have noted that he was white. However, when an inmate arrived after normal working hours, Rogers would not be present and the transport officer would fill out the Report. Rogers testified that it was not unusual for a transport officer to fill out the Report by asking the inmate for his biographical information, instead of relying on the paperwork. Rogers stated that her job the

next morning was to compare the Report with the information entered into the computer by the booking officer, checking to make sure it was complete and free of typographical errors.

In this case, Harris arrived at 6:15 p.m., which was after normal working hours, and Rogers was not present. Zugg testified that Waldrop filled out the Report by asking Harris for his biographical information. During her review the next day, Rogers did not notice any discrepancy between the Report and the information entered by the booking officer, and Harris admits he has no evidence to the contrary.

Harris's only other protest of innocence came two or three days after he arrived at the HCADC. On or around October 2, 2002, Harris claims that Defendant-Appellant George Payne ("Payne"), Sheriff of Harrison County, walked through Harris's cell block. Harris approached Payne and told him that he (Harris) was the "wrong person." Payne then allegedly told Harris that everybody says that and that Harris needed to sit down and shut his mouth. Payne does not recollect this conversation and asserts that had Harris told him he was the wrong person, he would have looked into the matter, as was his usual practice.

Harris had no further personal contact with Payne until his release on January 29, 2003. Harris also made no further protest of mistaken identity to any government actor during that time. However, his mother, Helen Christine Harris ("Ms. Harris") testified that she repeatedly contacted various Harrison County officials by phone to explain her son's innocence. She does not claim to have spoken to Payne, and Payne has no recollection of speaking to her.

Around January 28, 2003, the Harrison County District Attorney's Office notified Captain Rick Gaston that the Harris in custody might not be the Donald Harris identified in the alias capias warrant. Further investigation confirmed

4

this, and Harrison County released Harris on January 29, 2003, after four months of incarceration.

## II. PROCEDURAL HISTORY

Harris filed suit on December 12, 2003, against Forrest County, Harrison County, Payne, and the sheriff of Forrest County. Harris subsequently amended his complaint to add as defendants various Forrest County and Harrison County officials, including Zugg, Waldrop, and Rogers. Harris's claims included violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, brought pursuant to 42 U.S.C. § 1983, and numerous Mississippi state law claims. The Forrest County defendants settled, and the remaining defendants filed motions for summary judgment.

The district court granted summary judgment on Harris's federal claims on the ground of qualified immunity to all of the individual defendants except Payne. The district court also granted summary judgment to all of the individual defendants except Payne on Harris's state law claims pursuant to the Mississippi Tort Claims Act. Further, the district court granted summary judgment to Harrison County, ruling that Harris did not show his erroneous incarceration was the result of a policy or custom of the county.

Payne now appeals the denial of his motion for summary judgment. We have jurisdiction over Payne's appeal pursuant to the collateral order doctrine. See Gobert v. Caldwell, 463 F.3d 339, 344 (5th Cir. 2006). Harris appeals the grant of summary judgment to Zugg, Waldrop, Rogers, and Harrison County. We granted Harris leave to appeal under 28 U.S.C. § 1292(b).

## III. STANDARD OF REVIEW

With respect to Harris's appeal, we review grants of summary judgment, including grants based on qualified immunity, de novo, applying the same standard as the district court. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007); Stidham v. Tex. Comm'n on Private Sec., 418 F.3d 486,

490 (5th Cir. 2005). Summary judgment is appropriate when, after considering the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Bulko v. Morgan Stanley DW Inc., 450 F.3d 622, 624 (5th Cir. 2006).

Our consideration of Payne's appeal of the denial of qualified immunity is more limited, however. See Gobert, 463 F.3d at 344-45. When reviewing the denial of qualified immunity on summary judgment, we are permitted to decide only whether issues of fact are material, which is a question of law. Reyes v. City of Richmond, 287 F.3d 346, 351 (5th Cir. 2002); Bazan ex rel. Bazan v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001). We are not permitted to decide, and indeed we lack jurisdiction to decide, whether fact issues are genuine. Reyes, 287 F.3d at 351; Bazan, 246 F.3d at 490. Therefore, we must accept the district court's decision regarding which fact issues are genuine and review de novo the purely legal question of whether those genuine fact issues are also material. See Gobert, 463 F.3d at 345; see also Kinney v. Weaver, 367 F.3d 337, 348 (5th Cir. 2004) (en banc) (stating that the court may "consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment").

## IV. DISCUSSION

On appeal, Harris contends that the district court erred in determining that Zugg, Waldrop, and Rogers were entitled to the defense of qualified immunity with respect to Harris's federal claims and that the Mississippi Tort Claims Act barred Harris's Mississippi law claims. Harris also asserts that the district court incorrectly granted summary judgment to Harrison County. In his appeal, Payne contends that the district court erred in denying his motion for summary judgment on Harris's federal and state law claims. We will first

6

address Harris's federal claims against all of the individual defendants—Zugg, Waldrop, Rogers, and Payne.

## A.    Individual Defendants - Federal Claims

With respect to Harris's federal claims, we must decide whether the district court properly determined that Zugg, Waldrop, and Rogers were entitled to qualified immunity on Harris's constitutional claims, but that Payne was not so entitled.  Harris's complaint makes claims against the individual defendants under the Fourth, Fifth, Eighth, and Fourteenth Amendments; however, he only presents arguments on the Fourth and Fourteenth Amendments on appeal. Therefore, we will confine our analysis to his claims under those amendments. See Robinson v. Guarantee Trust Life Ins. Co., 389 F.3d 475, 481 n.3 (5th Cir. 2004) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument.").

### 1.    Qualified Immunity

Qualified immunity shields government officials from both liability and suit when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known.  Wallace v. County of Comal, 400 F.3d 284, 289 (5th Cir. 2005); see also Saucier v. Katz, 533 U.S. 194, 200-01 (2001) ("Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation.") (internal quotation marks omitted).  It is a defense that must be pleaded by the government official and should be addressed at an early stage in the litigation.  Saucier, 533 U.S. at 200-01; Siegert v. Gilley, 500 U.S. 226, 231 (1991).

We employ a two-step test to analyze claims of qualified immunity. Meadours v. Ermel, 483 F.3d 417, 422 (5th Cir. 2007).  The first question we must answer is whether the plaintiff's allegations, if true, demonstrate the violation of a clearly established right.  Wallace, 400 F.3d at 289; see also

Saucier, 533 U.S. at 201 (defining the threshold question as "[t]aken in the light most favorable to the [plaintiff], do the facts alleged show the officer's conduct violated a constitutional right?"). A right is "clearly established" when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir. 2000) (internal quotation marks omitted). If the plaintiff has alleged the violation of a clearly established right, we proceed to the second step of the analysis and determine whether the defendant's conduct was objectively reasonable under the law at the time of the incident. Michalik v. Hermann, 422 F.3d 252, 258 (5th Cir. 2005).

In the context of a summary judgment motion, the government official need only plead qualified immunity, which then shifts the burden to the plaintiff. Id. at 262. The plaintiff must rebut the defense by establishing that the government official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the government official's conduct. Id. We now analyze Harris's claims using this framework.

2.      Fourth Amendment Claim

We turn first to Harris's claims under the Fourth Amendment, which are two-fold. He first asserts that Zugg and Waldrop violated his Fourth Amendment rights by arresting him without probable cause. He then claims that Payne violated his Fourth Amendment rights by not presenting him to a judicial officer within forty-eight hours of his arrest.[1]

---

[1] Although Harris includes mention of Rogers in his Fourth Amendment claim, he makes no allegations that she was involved in the decision to arrest Harris. Her actions, thus, will be analyzed under Harris's Fourteenth Amendment claims.

### a. Zugg and Waldrop

To survive the first step of the qualified immunity analysis, Harris must allege facts that demonstrate that Zugg and Waldrop violated his Fourth Amendment rights. See Wallace, 400 F.3d at 289. Harris has asserted that Zugg and Waldrop arrested him without probable cause, violating several policies of the sheriff's office in the process, and that they should have verified his identity by looking at the paperwork. The undisputed facts are that Zugg and Waldrop picked up Harris from Forrest County and transported him to the HCADC without ever receiving any paperwork regarding Harris.

The Fourth Amendment requires that probable cause exist before the government may arrest an individual. U.S. CONST. amend. IV; Freeman v. Gore, 483 F.3d 404, 411 (5th Cir. 2007). Here, probable cause was present, as Harris was arrested pursuant to a warrant that had been issued following a grand jury indictment. "A warrant of arrest can be based upon an indictment because the grand jury's determination that probable cause existed for the indictment also establishes that element for the purpose of issuing a warrant for the apprehension of the person so charged." Giordenello v. United States, 357 U.S. 480, 487 (1958); Campbell v. City of San Antonio, 43 F.3d 973, 976 (5th Cir. 1995) (noting that an arrest warrant may be based on a grand jury indictment which establishes probable cause). Harris has not argued that the warrant was not based on probable cause or that it was faulty or improperly obtained. Consequently, probable cause existed to arrest Harris.

That Harris was not the "Donald Harris" named in the warrant does not create a Fourth Amendment violation. The Supreme Court has stated that "[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." Hill v. California, 401 U.S. 797, 802 (1971) (internal quotation marks omitted). The Fifth Circuit has followed this rule,

stating that "[t]he Fourth Amendment is not violated by an arrest based on probable cause, even if the wrong person is arrested, if the arresting officer had a reasonable, good faith belief that he was arresting the correct person." Blackwell v. Barton, 34 F.3d 298, 303 (5th Cir. 1994). Under this standard, the use of the alias capias warrant to detain Harris does not violate the Fourth Amendment as long as Zugg and Waldrop's actions were reasonable.

Harris asserts that Zugg and Waldrop's actions were not reasonable because they did not verify his identity before taking him into custody. This court encountered a similar situation in Blackwell, 34 F.3d at 300-04. In that case, a police officer arrested Mindy Blackwell, who had the same first name and general appearance as a person described in a warrant. Id. at 300. Blackwell gave the officer her driver's license, which showed she had a different last name than the warrant described, but the officer did not look at it. Id. On appeal, we stated that the critical question was "not whether a reasonable officer would have looked at the driver's license to confirm the name and other identifying information" but rather whether a reasonable officer could believe Blackwell was the suspect. Id. at 304. We ruled that the officer was entitled to qualified immunity, even if in hindsight he could have taken other reasonable actions to determine Blackwell's identity. Id.

Here, the HCADC told Zugg and Waldrop that they needed to retrieve Harris, and the Forrest County Sheriff's Office told Zugg and Waldrop that Forrest County had all the necessary paperwork. Zugg and Waldrop's reliance on these statements to establish that Harris was the proper individual is reasonable, even if they could have taken other reasonable actions to verify his identity. See United States v. Walker, 960 F.2d 409, 416 (5th Cir. 1992) ("The arresting officer does not have to have personal knowledge of all the facts constituting probable cause; it can rest upon the collective knowledge of the police when there is communication between them.") (internal quotation marks

10

omitted); see also United States v. Holland, 438 F.2d 887, 888 (6th Cir. 1971) ("The fact that the officers did not have physical possession of the warrant at the time of the arrest is of no consequence to the validity of the arrest.").

Harris also makes much of the fact that Zugg and Waldrop violated several general orders of the Sheriff's office by not having the paperwork with them and ensuring that they had the correct individual. The violation of a general order, however, is not the same as a violation of the Constitution. See Fraire v. City of Arlington, 957 F.2d 1268, 1276 (5th Cir. 1992) (stating that "even a negligent departure from established police procedure does not necessarily signal violation of constitutional protections"); see also United States v. De Leon-Reyna, 930 F.2d 396, 399-400 (5th Cir. 1991) (en banc) (finding no Fourth Amendment violation when officer did not use "code word" policy when reading license plate to dispatcher, resulting in mistaken detention of vehicle). Therefore, Harris's allegations that Zugg and Waldrop violated general orders do not necessarily state a constitutional claim. As shown above, Zugg and Waldrop's actions were reasonable and do not create a right to relief under the Fourth Amendment. That Zugg and Waldrop also violated internal policies does not transform Harris's claim into one of constitutional dimension.

Harris further argues that Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273 (5th Cir. 2002), supports his claim that Zugg and Waldrop were required by the Fourth Amendment to verify his identity. In Cozzo, a deputy evicted the plaintiff from her home on the basis of a TRO that did not actually require her eviction. Id. at 279. The deputy conceded he had violated the Fourth Amendment, and the court's analysis concerned the second prong of the qualified immunity test. Id. at 284-85. There, the court ruled that the jury was permitted to find that the deputy violated the plaintiff's rights, because the plaintiff actually pointed out to the deputy where he was misreading the TRO. See id. at 285. Here, unlike Cozzo, Zugg and Waldrop did not have

11

any exculpatory paperwork with them that would have exonerated Harris had they considered it.

In sum, and taking Harris's factual allegations as true, Harris has not alleged that Zugg and Waldrop violated a clearly established constitutional right. Probable cause existed for Harris's arrest because Zugg and Waldrop acted pursuant to a facially valid warrant and did not act unreasonably in doing so, even though Harris was not ultimately the man named in the warrant. Therefore, the district court correctly determined that Zugg and Waldrop were entitled to qualified immunity on this claim, and we affirm that portion of the district court's decision.

b.    Payne

With respect to Payne, Harris contends that Payne's failure to present him to a judicial officer within forty-eight hours of his arrival at the HCADC constitutes a violation of the Fourth Amendment. The district court did not specifically address this claim, but because it denied summary judgment to Payne, we consider the claim on appeal.

To establish his Fourth Amendment claim against Payne, Harris relies on Rule 6.03 of Mississippi's Uniform Rules of Circuit and County Court Practice, which states, in part:

> Every person in custody shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer or other person authorized by statute for an initial appearance.

> Upon the defendant's initial appearance, the judicial officer or other person authorized by statute shall ascertain the defendant's true name and address, and amend the formal charge if necessary to reflect this information. The defendant shall be informed of the charges against him/her and provided with a copy of the complaint.

Harris asserts that by not taking him to a judicial officer after his arrival at the HCADC, Payne violated the Fourth Amendment. We disagree.

The Mississippi Supreme Court has held that a violation of Rule 6.03 does not necessarily equate to a Fourth Amendment violation. Lawrence v. State, 869 So. 2d 353, 355-56 (Miss. 2003) (en banc) (ruling that because arrest warrant was issued within forty-eight hours of defendant's arrest, failure to provide initial appearance did not amount to Fourth Amendment violation). This holding accords with Supreme Court precedent on the issue of initial appearances. In Gerstein v. Pugh, the Court held that the Fourth Amendment requires a state to "provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." 420 U.S. 103, 124-25 (1975) (footnotes omitted). The Court has also stated that "since the probable cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable[ ]cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." Baker v. McCollan, 443 U.S. 137, 143 (1979).

Under these cases, the allegation that Payne did not provide Harris with an initial appearance in violation of Rule 6.03 does not state a claim under the Fourth Amendment. The grand jury determined that there was probable cause that Donald Harris committed a crime when it indicted Donald Harris, and the alias capias warrant was based on the indictment. As a result, probable cause for Harris's pretrial detention existed, and Harris was not constitutionally entitled to a second determination of probable cause. Consequently, Harris's Fourth Amendment claim against Payne does not state a claim for a violation of clearly established law, and the district court erred when it denied qualified immunity to Payne on this claim. Therefore, we reverse that portion of the district court's decision.

### 3. Fourteenth Amendment

Harris next asserts that Zugg, Waldrop, Rogers, and Payne violated his rights under the Fourteenth Amendment by depriving him of his liberty without due process of law. The district court determined that Zugg, Waldrop, and Rogers were entitled to qualified immunity on this claim, but that Payne was not.

The Supreme Court confronted a situation in which a plaintiff brought suit for the violation of his due process rights after he was erroneously incarcerated in *Baker v. McCollan*, 443 U.S. 137 (1979). In *Baker*, Leonard McCollan obtained a duplicate of his brother Linnie's driver's license that was identical to Linnie's in all respects except that Leonard's picture was on it. *Id.* at 140. Leonard was then arrested on narcotics charges, but was booked and released as Linnie. *Id.* at 140-41. Linnie was later stopped for running a red light. *Id.* at 141. The police ran a routine warrant check and discovered the warrant for Linnie. *Id.* Linnie spent three days in custody before the police compared his appearance to the file photograph of Leonard and released him. *Id.* Linnie brought suit for the violation of his rights under the Fourteenth Amendment. *Id.* The Fifth Circuit determined that T.L. Baker, the sheriff, was not entitled to qualified immunity because there was a question as to whether the procedures that Baker instituted to identify detainees were reasonable. *Id.* at 141-42.

On appeal, the Supreme Court did not reach the issue of the reasonableness of Baker's procedures, instead holding that Linnie failed the first step of the qualified immunity analysis by not alleging the violation of a clearly established right under the United States Constitution. *Id.* at 143-44. Linnie claimed that Baker deprived him of his liberty by intentionally failing to investigate and determine that the wrong man had been imprisoned. *Id.* at 143. The Supreme Court, however, stated that the Fourteenth Amendment does not protect against all deprivations of liberty, but rather only those accomplished

14

"without due process of law."  Id. at 145 (internal quotations marks omitted).

The Court went on to explain:

> Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.  Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

Id. at 145-46.

The Court, however, did not entirely shut the door on the possibility that the erroneous detention of an innocent person could result in a constitutional claim.  Instead, the Court stated, "[o]bviously, one in [Linnie]'s position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment."  Id. at 144.  The Court further stated, "[w]e may even assume, arguendo, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law.'"  Id. at 145.  The Court, however, did not elaborate further on what circumstances might give rise to a due process violation.

The Court in Baker originally granted certiorari to determine whether an allegation of negligence was sufficient to state a claim under § 1983, but it ultimately did not reach that issue.  Id. at 139-40.  In a subsequent case, the Court concluded that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."  Daniels v. Williams, 474 U.S. 327, 328 (1986).  The Fifth Circuit has

15

had occasion to apply the principles in Baker and Daniels with respect to due process claims arising from erroneous detentions or incarcerations.

In Sanchez v. Swyden, this court considered the case of Oscar Sanchez, who was detained by police for twenty-six hours because his name and general description matched those on a warrant from Tennessee. 139 F.3d 464, 465 (5th Cir. 1998). Although the police were faxed further information several hours after Sanchez's detention that indicated that Sanchez was not the individual sought, the police took no action until the judge at Sanchez's probable cause hearing ordered the police to confirm Sanchez's identity, at which time he was released. Id. at 465-66. We held that Sanchez's allegations amounted to no more than mere negligence and thus did not state a claim for the violation of a clearly established constitutional right. Id. at 469.

Similarly, in Simmons v. McElveen, the plaintiff spent eight months in jail after being identified as the assailant in an armed robbery, even though his fingerprints did not match those of the assailant. 846 F.2d 337, 338-39 (5th Cir. 1988). This court held that, in hindsight, the police should have looked at the fingerprints; however, the allegations of police misconduct did not exceed mere negligence, which was not actionable. Id. at 339.

This court reached the opposite result in Sanders v. English, 950 F.2d 1152 (5th Cir. 1992). In Sanders, Floyd Sanders was arrested after being identified as the assailant in an armed robbery. Id. at 1155-56. Curtis McCoy, the arresting officer, subsequently received credible information that Sanders was not the assailant but did not bring the information to the attention of the police chief or the prosecutor. Id. at 1156-57. Sanders remained incarcerated for fifty days as a result. Id. at 1158. We held that McCoy was not entitled to qualified immunity on summary judgment because there was a fact issue as to whether McCoy "failed to release [Sanders] even after [McCoy] knew (or should have known) that Sanders had been misidentified." Id. at 1162 (characterizing

the facts as demonstrating that the officer "knowingly and willfully ignored substantial exculpatory evidence"). We distinguished Baker by reasoning that Baker dealt with the failure to take affirmative steps to investigate the suspect's innocence, rather than the failure to act on known information. Id. We held, however, that Sheriff English, whose involvement in the case consisted of hearing a few witnesses claim that Sanders was innocent, was entitled to qualified immunity, as his actions in failing to investigate Sanders's innocence were at most negligent. Id. at 1159-60.

Taking all of these cases into account, allegations that an officer had exculpatory information in his possession but did not take the affirmative step of reviewing it are not sufficient to state a due process claim. See Sanchez, 139 F.3d at 469 ("That law enforcement officials were in possession of information that exculpated Sanchez does not change [the qualified immunity] result.") Instead, as in Sanders, the plaintiff must demonstrate that the officer knew or should have known that the plaintiff was wrongly detained.

This idea is consistent with the cases cited by Harris. In Gay v. Wall, the Fourth Circuit held that claims that the officer had actual knowledge of the defendant's innocence, but continued to detain him, fall outside the limitation of Baker and are actionable. 761 F.2d 175, 178-79 (4th Cir. 1985). Similarly, in Cozzo, the officer who erroneously evicted the plaintiff pursuant to a TRO was actually shown by the plaintiff that the TRO did not call for her eviction. 279 F.3d at 285. Therefore, the cases cited by Harris stand only for the proposition that an officer's actual knowledge of a suspect's innocence can overcome the limitation of Baker, which is consistent with the Fifth Circuit cases cited above.[2]

---

[2] Harris also relies on Jones v. City of Jackson, 203 F.3d 875, 880-81 (5th Cir. 2000), in which this court denied qualified immunity to a sheriff and his deputy when an individual was wrongly incarcerated for nine months. While Jones does provide support for Harris's arguments, we find that the majority of precedent in the Fifth Circuit and Supreme Court militates toward granting qualified immunity. The Jones opinion does not cite any of the

Using the principles described above, we must conclude that Harris has failed to state a claim against any of the individual defendants for the violation of a clearly established constitutional right. As described in Baker, the Constitution does not require police officers to "investigate independently every claim of innocence . . . ." 443 U.S. at 145-46. Further, Harris's one protest of innocence to Zugg and Waldrop and one protest to Payne are not sufficient to fall under the exception created in Baker for individuals who make "repeated protests" of innocence.

Harris has also not alleged that any act by Zugg, Waldrop, Rogers, or Payne rises beyond the level of negligence. See Sanchez, 139 F.3d at 469 ("[W]e have required proof that the official's actions went beyond mere negligence before th[e] tort [of false imprisonment] takes on constitutional dimensions."). While all of the individuals had access to information that would have exonerated Harris, none of them was aware of it, nor has Harris shown that any of the individuals should have been aware of it. Under our precedent, these allegations are insufficient to state a claim for the violation of a constitutional right. As a result, all of the individual defendants, including Payne, are entitled to qualified immunity. Therefore, we affirm the district court's ruling as to Zugg, Waldrop, and Rogers, but we reverse as to Payne.

B.    Individual Defendants - State Claims

We now turn to Harris's state law claims of negligence, gross negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, malicious prosecution, assault and battery, false imprisonment and arrest, defamation and slander, wrongful detention, and mistaken identity. The district court granted summary judgment on the basis of the Mississippi Tort Claims Act ("MTCA") to Zugg, Waldrop, and Rogers, but not to Payne.

---

relevant precedent described above regarding due process and makes no attempt to explain or distinguish it. Therefore, the Jones opinion is not persuasive in this instance.

Pursuant to the MTCA,

(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

\* \* \*

(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury . . . .

MISS. CODE ANN. § 11-46-9. As used in this statute, "reckless disregard" has been described by the Mississippi Supreme Court as "more than ordinary negligence, but less than an intentional act." City of Jackson v. Brister, 838 So. 2d 274, 280 (Miss. 2003); see also Titus v. Williams, 844 So. 2d 459, 468 (Miss. 2003) (stating that reckless disregard encompasses "willful and wanton" actions). To meet this standard, the officer's conduct must "evince[] not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved." Maldonado v. Kelly, 768 So. 2d 906, 910-11 (Miss. 2000). The Mississippi Supreme Court has further defined reckless disregard as a "conscious indifference to consequences, amounting almost to a willingness that harm should follow." Titus, 844 So. 2d at 468 (internal quotation marks omitted). To avoid summary judgment, a plaintiff must create a genuine issue of material fact that the officers "took action that they knew would result or intended to result" in injury. Id.

On appeal, the parties do not dispute the definition of reckless disregard, but instead argue over whether the actions of the individual defendants constitute reckless disregard. As described above, the conduct of Zugg, Waldrop, Rogers, and Payne, as alleged by Harris, does not rise above the level of negligence. Under Mississippi law, the reckless disregard standard is not

satisfied by conduct that is merely negligent. See *City of Jackson*, 838 So. 2d at 280. Consequently, the MTCA precludes a finding that the individual defendants are liable for any state tort claims. Therefore, we affirm the grant of summary judgment to Zugg, Waldrop, and Rogers, and we reverse the denial of summary judgment to Payne.

## C.    Harrison County

Finally, Harris appeals the grant of summary judgment to Harrison County. The district court dismissed Harris's claims against Harrison County because Harris had not set forth evidence of a policy or custom of Harrison County that caused the deprivation of his rights. Harris does not contest that he did not establish a policy or custom of Harrison County, but instead argues that Harrison County is liable for Payne's actions because he is a policymaker for the county.

Normally, a governmental entity is not liable under § 1983 unless the evidence establishes that a policy or custom of the government caused the constitutional violation, and a single act by a government employee is often insufficient to establish the requisite policy or custom. See *Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 527 (5th Cir. 2006); *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001). However, the Fifth Circuit's cases are clear that "[a] single decision may create municipal liability if that decision [is] made by a final policymaker responsible for that activity." *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005) (internal quotation marks omitted); see also *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1246 (5th Cir. 1993). Further, this court has held that "[s]heriffs in Mississippi are final policymakers with respect to all law enforcement decisions made within their counties." *Brooks v. George County*, 84 F.3d 157, 165 (5th Cir. 1996). Therefore, Harrison County is liable for Payne's acts as Sheriff, because he is a final policymaker for Harrison County, regardless of the existence of a policy or custom. Consequently, the

district court did err in dismissing Harrison County while leaving Payne in the case. However, as noted above, Harris's allegations against Payne do not state a claim for the violation of a constitutional right. Payne's actions were, at most, negligent, and therefore do not give rise to a constitutional claim. As a result, there is no misconduct by Payne for which Harrison County can be held liable. Therefore, we affirm the grant of summary judgment to Harrison County.

## V. CONCLUSION

In sum, it is clear that the Harrison County system failed Harris at every point, and the fact that a clearly innocent individual can be held for four months without a court appearance or verification of his identity gives us great concern. However, the actions of the individual defendants sued by Harris and involved in this appeal amounted to no more than negligence, which is insufficient to create a constitutional claim or to fall outside the protection of the MTCA. Therefore, we AFFIRM the district court's decision granting summary judgment to Zugg, Waldrop, Rogers, and Harrison County. We REVERSE the denial of summary judgment as to Payne.

AFFIRMED in part and REVERSED in part.

DENNIS, Circuit Judge, concurring in the judgment:

I respectfully concur in the judgment. The majority reached the right result in granting qualified immunity to all defendants. I disagree with the majority in that the defendants did violate the Fourth and Fourteenth Amendment rights in several respects as the plaintiff alleges, but I agree with the majority in granting of qualified immunity to all defendants, because those rights were not clearly established at the time of the violations.