United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 20, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-60088

_____


MICHAEL SCRIBNER

Plaintiff-Appellee

versus

DANNY DILLARD, ETC; ET AL

Defendants

DANNY DILLARD, Individually, and

GARY DODDS, Individually

Defendants-Appellants

_____

Appeal from the United States District Court for

the Northern District of Mississippi

(01-CV-325)

_____


Before WIENER, BARKSDALE and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:[*]

The plaintiff brought this suit for damages under 42 U.S.C. §
1983 against two deputy sheriffs alleging, among other things, that
the defendants violated his constitutional rights by arresting him
without probable cause. A jury found in favor of the plaintiff; the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

defendants appeal from the district court's denial of their post-verdict motion for judgment as a matter of law (JMOL).  Finding no error, we AFFIRM.

I.

The plaintiff, Michael Scribner, was arrested for conspiring to help a friend, Jim Garrison, plant drugs in Garrison's estranged wife's car.  Following his arrest, Scribner entered a *nolo contendre* plea to a reduced charge of misdemeanor trespassing.  Under Mississippi Code § 99-15-26, Scribner requested that the court withhold acceptance of his plea.  The court agreed and subsequently, on Scribner's motion, dismissed the charges and expunged his record.[1]

Scribner filed a complaint against the defendants, Lee County deputy sheriffs Danny Dillard and Gary Dodds, stating claims for wrongful arrest, malicious prosecution and abuse of process under 42 U.S.C. § 1983.  The district court granted summary judgment to the defendants on the claim of malicious prosecution.  The claims for wrongful arrest and abuse of process were tried before a jury.

---

[1] The defendants have not argued on appeal that the jury verdict in favor of Scribner should be reversed because it implicitly invalidated Scribner's criminal conviction in violation of *Heck v. Humphrey,* 512 U.S. 477 (1994).  The defendants have therefore waived any defense they may have had under *Heck.  Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 653 (5th Cir. 2004)("Issues not raised or inadequately briefed on appeal are waived"); *see also Okoro v. Bohman*, 164 F.3d 1059, 1061 (7th Cir. 1999)(*Heck* defense is not jurisdictional and may be waived).

2

Testimony at trial established that Scribner was formerly employed as a Lee County deputy sheriff and worked with both of the defendants. At some point, the relationship between the three men deteriorated and Scribner came to believe that the defendants hated him.

In the summer of 1999, the sheriff's office learned that drugs had been planted in Barbara Garrison's car. The defendants began investigating the crime and shortly thereafter arrested Jim Garrison, Scribner's business associate and friend.

On June 29, 1999, Deputy Goddard was called to the scene of an attempted suicide by Ricky Mayhall. When he arrived, Mayhall was drunk and crying. According to Goddard's testimony at trial, Mayhall stated that he was afraid because he, Jim Garrison and a man named Mike had been involved in a plot to plant drugs in someone's car. Defendant Dillard subsequently arrived on the scene. According to his testimony, Mayhall stated that he had planted drugs in Barbara Garrison's car for Jim Garrison and a police officer named Mike.

Defendant Dillard took Mayhall to see the Assistant District Attorney, Dennis Ferris, where, according to Ferris' testimony, Mayhall again implicated himself, Garrison and a man named Mike in the conspiracy. Thereafter, the defendants took a statement from Mayhall. Defendant Dillard drafted the statement and Mayhall, who can neither read nor write, signed it. According to the statement,

3

Mayhall purchased drugs and delivered them to Garrison. "Officer Mike" then drove Mayhall and Garrison to the location where Barbara Garrison had parked her car and Mayhall put the drugs in the car.

Mayhall testified that due to his intoxication he does not remember speaking to either the defendants or Ferris on June 29th and has no memory of giving a statement that evening. The police held Mayhall overnight. Jail records indicate that Mayhall was both very drunk and very emotional that night.

The following day, the defendants again questioned Mayhall. Mayhall testified that during that second interview, the defendants got angry when he failed to implicate Scribner. According to Mayhall, they said "we know [Scribner's] dirty and we're going to prove it one way or another." Mayhall testified that the defendants continued to question him until: "I finally decided the only way I was going to get out of that cell was to go ahead and tell them [Scribner] had something . . . to do with it." The defendants wrote up another statement, substantially similar to the first statement but identifying "officer Mike" as Scribner, and Mayhall signed it.

Ferris and Dodds presented Mayhall's statements to the grand jury. Neither Ferris nor Dodds remember mentioning Mayhall's suicide attempt, intoxication  or illiteracy to the grand jury, nor did they recall informing the grand jury of the animosity between the defendants and Scribner.

Testimony at trial established that Mayhall was well known

4

amongst the defendants' co-workers. Those officers generally thought that Mayhall was unreliable and easily coerced. The defendants, however, testified that they had no knowledge regarding Mayhall's reputation for truthfulness.

At the close of evidence, the district court granted the defendants' motion for JMOL on the abuse of process claim but denied the defendants' motion for JMOL on the wrongful arrest claim. The jury returned a verdict in favor of Scribner on that claim and awarded $120,000 in damages. Following the jury verdict, the defendants renewed their motion for JMOL and moved for a new trial. The district court denied the motion and the defendants timely appealed.

## II.

The defendants argue that the district court erred by denying their motion for JMOL. This court reviews a district court's denial of a JMOL *de novo*, applying the same standards as the district court.[2] "A motion for [JMOL] . . . in an action tried by jury is [, in essence,] a challenge to the legal sufficiency of the evidence supporting the jury's verdict."[3] This court will uphold a jury verdict unless "there is no legally sufficient evidentiary basis for

---

[2] *Primrose Operating Co. v. National American Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004)(citing *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004)).

[3] *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995).

a reasonable jury to find" as it did.[4]  "[I]n entertaining a motion for [JMOL], the court should review all of the evidence in the record.  In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."[5]

The defendants argue that they are entitled to JMOL because there was no legally sufficient evidence for the jury to find that they withheld or misrepresented evidence to the grand jury and, therefore, the grand jury's indictment insulates them from liability.  "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."[6] The chain of causation is broken, however, "only where all the facts are presented to the grand jury or magistrate and the malicious motive of the officer does not lead him to withhold any relevant information."[7]  "Any misdirection of the magistrate or the grand jury

---

[4] FED. R. CIV. P. 50(a).

[5] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

[6] *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994) (citing *Wheeler v. Cosden Oil & Chem. Co.*, 744 F.2d 1131, 1132 (5th Cir. 1984)).

[7] *Morris v. Dearborne*, 181 F.3d 657, 673 (5th Cir. 1999)(quoting *Taylor v. Gregg*, 36 F.3d 453, 457 (5th Cir. 1994)).

by omission or commission perpetuates the taint on the original official behavior."[8]

Scribner claims that the defendants are not entitled to JMOL. He argues that the defendants waived their ability to raise the legal theory they now espouse by failing to raise the insulating effect of the grand jury indictment as an affirmative defense in their answer, failing to raise it in the pre-trial order and failing to request jury instructions consistent with that legal theory. The district court agreed with Scribner, concluding, among other things, that the defendants had waived any argument concerning the grand jury indictment by failing to raise it prior to the verdict.

The defendants raised the insulating effect of the grand jury indictment for the first time in their Rule 50(b) post-trial motion for JMOL. Scribner did not, however, object to the defendants' claim on the grounds that they failed to raise it in their Rule 50(a) pre-verdict motion for JMOL. Our precedent establishes that such an objection is required to preserve the matter of forfeiture for appellate review.[9] Thus, if the defendants had merely failed to raise the grand jury indictment in their Rule 50(a) motion, we would reach the merits of their claim. The defendants' waiver in this

---

[8] *Hale v. Fish*, 899 F.2d 390, 401 (5th Cir. 1990) (quoting *Hand v. Gary*, 838 F.2d 1420, 1427-28 (5th Cir. 1988)).

[9] *Thompson and Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 435 (5th Cir. 1996).

7

case, however, goes far beyond a mere failure to raise the legal theory in a pre-verdict motion for JMOL. The defendants never argued <u>at any time prior to the verdict</u> that the intervening act of the grand jury insulated them from liability. "[A] litigant cannot strategically lie behind the log until after the trial and receipt of evidence, argument, and charge to the jury before raising an issue not found in the pleadings nor included in the pre-trial order and then raise it when it is too late for his opponent to do anything about it. The manifest prejudice of such tactics would make a shambles of the efficacy of pretrial orders and a fair trial."[10]

At the very least, to preserve this issue, the defendants had to raise it in the pretrial order. "It is a well-settled ruled that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial."[11] Moreover, "[a]n affirmative duty exists at the pretrial conference for each party to allege clearly all factual and legal bases upon which the party wishes to litigate the case."[12] The

---

[10] *Glass Containers Corp. v. Miller Brewing Co.*, 643 F.2d 308, 312 (5th Cir. 1981) (quoting *Bettes v. Stonewall Insurance Company*, 480 F.2d 92, 94 (5th Cir. 1973)).

[11] *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 604 (5th Cir. 2000) (quoting *McGehee v. Certainteed Corp.*, 101 F.3d 1078, 1080 (5th Cir. 1996)).

[12] *Portis v. First Nat'l Bank*, 34 F.3d 325, 332 (5th Cir. 1994).

pretrial order in the present case does not include any mention of causation nor any suggestion that the intervening act of the grand jury insulated the defendants from liability. There is no possible reading of the order that would put Scribner on notice that the defendants intended to argue that the grand jury indictment relieved them of liability for Scribner's arrest.

We reject the defendants' argument that their claim of qualified immunity was sufficient to inform the court, and Scribner, of the defense they now assert. Qualified immunity is separate and distinct from a defense based upon the intervening act of a neutral intermediary. "The qualified immunity analysis is a two-step inquiry. First, a court must decide whether the plaintiffs' allegations, if true, establish a violation of a clearly established right. . . . Second, if the plaintiffs have alleged a violation, the court must decide whether the conduct was objectively reasonable in light of clearly established law at the time of the incident."[13] A defense based upon the intervening actions of a neutral intermediary, on the other hand, challenges causation and is not related either to whether the plaintiff alleged the violation of a clearly established right nor the reasonableness of the defendants' actions. Accordingly, the defendants' claim of qualified immunity did not put Scribner on notice that they intended to claim that the

---

[13] *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) (citing *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (en banc)).

9

grand jury's indictment insulated them from liability.

We also reject the defendants' suggestion that it "would have bordered on frivolous" for them to argue that the grand jury's indictment insulated them from liability prior to the verdict because the Scribner's theory of the case, up to that point, was that the defendants coerced false evidence from Mayhall. According to the defendants, the insulating effect of the grand jury indictment became relevant only after Scribner changed his trial strategy and began asserting that the defendants should not have believed Mayhall, even if his statements were wholly voluntary. The defendants, however, noted Scribner's new theory in their pre-verdict motion for JMOL, filed after Scribner rested his case, and in the jury charge conference. Yet the defendants did not, at either time, seek to amend the pre-trial order to include the legal theory that they now assert nor did they seek to add a jury instruction concerning the intervening act of the grand jury. Thus, the defendants had the opportunity to raise the insulating effect of the grand jury indictment prior to the verdict but chose not to. Accordingly, "any injury resulting from our [decision] . . . is a direct result of the [defendants'] failure to properly present [their] case."[14]

Because the defendants cannot now assert that the grand jury

---

[14] *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979).

10

indictment broke the chain of causation between their actions and Scribner's arrest, we review their post-verdict motion for JMOL only to the extent that they argue that there was insufficient evidence to support the jury's conclusion that the defendants lacked probable cause to arrest the plaintiff. "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[15]

After examining the record, we conclude that there was a legally sufficient evidentiary basis to support the jury's verdict. Specifically, Mayhall was taken into custody after trying to commit suicide and witnesses described him as drunk, sobbing, rambling, and scared. It was in this state that Mayhall allegedly gave a statement inculpating Scribner. The following day, according to Mayhall's testimony, he had to be coached and/or intimidated into again inculpating Scribner. Thus, there was a legally sufficient evidentiary basis for the jury to find that Mayhall's statements would not have led a reasonable officer to conclude that Scribner had committed a crime. Accordingly, we affirm the district court's denial of the defendants' motion for JMOL.

III.

_____

[15] *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004)(Internal quotation marks and citation omitted).

The defendants argue that the they are entitled to a new trial because the district court erroneously instructed the jury on probable cause. The district court has broad discretion in formulating the jury charge, and this court reviews instructions with deference.[16] The standard of review applied to a claim that a jury instruction was erroneous is "whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of the law applicable to the factual issues confronting them."[17] The defendants must show that the instruction creates a "substantial and ineradicable doubt whether the jury [was] properly guided in its deliberations."[18] Finally, this court will not reverse even an erroneous instruction if, upon review of the "entire record, the challenged instruction could not have affected the outcome of the case."[19]

The district court's charge to the jury included the following:

You're instructed that in order for an officer to justify an arrest on the grounds that he had probable cause for an arrest, the officer must show that he had a reasonable basis for believing that the person was guilty of a crime. When the

---

[16] *Deines v. Tex. Dep't of Protective and Regulatory Servs.*, 164 F.3d 277, 279 (5th Cir. 1999).

[17] *General Universal Sys. v. Lee*, 379 F.3d 131, 153(5th Cir. 2004)(quoting *United States v. Daniels*, 281 F.3d 168, 183 (5th Cir. 2002)).

[18] *Deines*, 164 F.3d at 279 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995)).

[19] *Id.*

12

officer bases his belief of guilt of a crime on the word of an informant, such as Ricky Mayhall, the officer must have a basis for believing that the informant is trustworthy and reliable taken in conjunction with all other evidence available to the officer.

You're instructed that in determining whether or not there was probable cause for the arrest of the plaintiff, you are to determine whether or not any reasonable law enforcement officer confronted with the same information and circumstances with which the defendants were confronted would have believed that there was a probability that the plaintiff had committed a crime.

According to the defendants, "the standard contained [in the jury instruction] applied to a determination of information credibility when officers seek a search warrant" and "probable cause involving search warrants differs from that involving a warrant for arrest." The defendants are incorrect, however, as the standards for judging the credibility of the information provided by an informant[20] are the same for both search warrants and arrest warrants.[21]

---

[20] We note that Mayhall was not merely an informant but was an alleged coconspirator in the criminal enterprise in which he implicated Scribner. Because the defendants argue only that the district court misstated the standard for judging the reliability of statements obtained from an informant and never suggested to the district court or to this court that Mayhall's statements should be evaluated using any alternate criteria, the question of whether Mayhall's statements should be treated as those of an ordinary informant is not before us. *See United States v. Fagan*, 821 F.2d 1002, 1015 n.9 (5th Cir. 1987) (arguments not briefed are deemed waived); FED. R. CIV. P. 51 (objections to jury instructions must state distinctly the matter objected to and the grounds of the objection).

[21] See *Mendenhall v. Riser*, 213 F.3d 226, 235 n.18 (5th Cir. 2000) ("Our case law, following the Supreme Court, makes clear that probable cause to search is no different than probable cause

13

The defendants further claim that *Illinois* v. *Gates*[22] "made it clear that informant-based probable cause did not require officers to support their affidavit for a search warrant through evidence of an informant's trustworthiness and reliability." In *Gates*, the Supreme Court rejected the rigid two-prong test derived from its previous decisions in *Aguilar v. Texas*[23] and *Spinelli v. United States*[24] in favor of evaluating the reliability of an informant's statement based upon the totality of the circumstances. The Supreme Court stated: "We agree with the Illinois Supreme Court that an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case . . . ."[25] Thus, the Supreme Court held that an anonymous tip, which was amply corroborated, could provide probable cause to search.

_____

to arrest.") The case relied upon by the defendants, *United States v. Rojas*, 671 F.2d 159, 165 (5th Cir. 1982), merely holds that the <u>factual</u> basis necessary to establish probable cause to arrest may be different from the factual basis necessary to establish probable cause to search; it does not hold that there is any difference in the legal definition of "probable cause" in the context of search and arrest warrants.

[22] 462 U.S. 213 (1983).

[23] 378 U.S. 108 (1964).

[24] 393 U.S. 410 (1969).

[25] *Gates*, 462 U.S. at 230.

14

The jury instruction challenged by the defendants in the present case does not violate *Gates*. Rather, the district court properly instructed the jury to consider whether, in light of all of the evidence available to them, the defendants had a basis for believing that Mayhall, whose uncorroborated statements they relied upon to establish probable cause, was reliable and trustworthy. This is entirely consistent with the totality of the circumstances test adopted in *Gates*.

For the foregoing reasons, the decision of the district court is AFFIRMED.