IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 6, 2008

Charles R. Fulbruge III
Clerk

No. 07-30589

ROBERT FAIRLEY; RONALD GEORGE, on their own behalf(s) and on
behalf of all individuals similarly situated; NATHANIEL CARR; KEVIN
GREEN; FAY HARDY; TYRELL LEBLANC; LADOIA SMITH; CLIFTON
THOMPSON

      Plaintiffs - Appellants

BARBARA ANN ANDERSON; ET AL

      Appellants

  v.

RICHARD L STALDER, Secretary Department of Public Safety and
Corrections

      Defendant - Appellee

Appeal from the United States District Court for the
Eastern District of Louisiana
No. 2:06-cv-3788

Before SMITH, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Plaintiffs-Appellants Robert Fairley and Ronald George, on their own behalves and on behalf of all individuals similarly situated, et al. ("Fairley") appeal dismissal of their claims against Louisiana Department of Public Safety and Corrections Secretary Richard Stalder, in both his individual and official capacities.[1] Fairley contends that (1) the State of Louisiana waived its sovereign immunity either constructively or by its litigation conduct, (2) Congress abrogated Louisiana's sovereign immunity by attaching "strings" to funds it granted to the State, (3) Louisiana is a "person" subject to suit under 42 U.S.C. § 1983 (2000), and (4) the claims against Stalder in his individual capacity were improperly dismissed. Concluding that these contentions are wholly without merit, with some bordering on frivolous, we affirm their dismissal by the district court.

## I. FACTS AND PROCEEDINGS

Fairley filed a putative class action in the district court on behalf of inmates and former inmates of penal facilities in Orleans Parish[2] prior to and in the aftermath of Hurricane Katrina. The complaint sought damages stemming from the alleged deprivation and violation of federal constitutional rights and rights under Louisiana law caused by the State of Louisiana, the

---

[1] Fairley also contends that his claims against the State of Louisiana and the Louisiana Department of Public Safety and Corrections were improperly dismissed. As he only urges jurisdiction pursuant to 28 U.S.C. § 1291 as the basis for this appeal, however, dismissals outside of the Rule 54(b) partial final judgment entered by the district court cannot be considered by us at this juncture. Although it is possible for a district court's order to be final without explicit reference to Rule 54(b), counsel is required to direct our attention to language that "either independently or together with related parts of the record reflects the trial judge's clear intent to enter a partial final judgment under Rule 54(b)." Kelly v. Lee's Old Fashioned Hamburgers, Inc., 908 F.2d 1218, 1220 (5th Cir. 1990) (en banc). The fact that the district court did enter a Rule 54(b) partial final judgment as to some of the claims dismissed in its earlier orders will be taken by us as some evidence that the court did not intend to create a final judgment for our review of the claims dismissed but not part of the Rule 54(b) partial final judgment.

[2] Each of the penal facilities named appears to be a unit within the Orleans Parish Criminal Sheriff's Office (the "OPCSO").

Louisiana Department of Public Safety and Corrections (the "DOC"), Stalder, in his individual and official capacities, the Orleans Parish Criminal Sheriff's Office, Orleans Parish Criminal Sheriff Marlin Gusman, in his individual and official capacities, and unnamed deputies, officers, and troopers.

The complaint alleged that despite a declaration of emergency by Louisiana Governor Kathleen Blanco on August 26, 2005, and a mandatory evacuation order issued by New Orleans Mayor Ray Nagin on August 28, 2005, both in advance of Hurricane Katrina's landfall on August 29, 2005, the defendants failed to plan for evacuation of the plaintiffs, to evacuate the plaintiffs, and to provide food, water, clothing, bedding, sanitary facilities, and medication. The conditions Fairley describes after Katrina are deeply troubling: abandonment by the defendants; incarceration under lock and key in fetid conditions without food, water, or sanitary facilities and without information as to when assistance might come; and immersion in "toxic soup" during evacuation to a filthy, hot, and uncomfortable highway overpass. He claims, under various theories, that these acts and omissions violated his rights, and those of others similarly situated, under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as under Louisiana law. Suit for relief on the federal claims was brought pursuant to 42 U.S.C. § 1983, and supplemental jurisdiction was asserted for the state law claims.

Louisiana, the DOC, and Stalder, in his official capacity, moved to dismiss the state law claims under Federal Rule of Civil Procedure 12(b)(1) and to dismiss the § 1983 claims under Rule 12(b)(6), asserting sovereign immunity and contending that Louisiana and the DOC are not "persons" susceptible to suit under § 1983. Stalder also moved under Rule 12(b)(6) to dismiss all federal claims against him in his individual capacity under the doctrine of qualified immunity and to dismiss all state claims under Louisiana Revised Statutes sections 9:2798.1 and 29:735.

Fairley then filed a first amended complaint, which added additional plaintiffs. After further motion practice, the magistrate judge to whom the case had been referred ordered Fairley to file another amended complaint to comply with the requirement, for cases in which qualified immunity has been asserted as a defense, that plaintiffs plead "with factual detail and particularity, not mere conclusionary allegations"[3] any claims against Stalder in an individual capacity. This second amended complaint was filed and included, inter alia, new claims for prospective injunctive relief. Fairley's effort to comply with the heightened pleading standard for qualified immunity cases consisted of a four-line paragraph purporting to incorporate by reference, in toto, the American Civil Liberties Union ("ACLU") National Prison Project report entitled Abandoned & Abused: Orleans Parish Prisoners in the Wake of Hurricane Katrina.

The magistrate judge recommended that all state and federal claims against Louisiana and the DOC be dismissed on grounds of sovereign immunity, and that all claims against Stalder in his official capacity be dismissed because he is not a person susceptible to suit under § 1983 in his official capacity. The district court adopted the magistrate judge's report and recommendations and dismissed all claims against Louisiana, the DOC, and Stalder in his official capacity pursuant to Rules 12(b)(1) and 12(b)(6). The district court also dismissed the claims against Stalder in his individual capacity under Rule 12(b)(6). Leave to amend a third time was denied, and the district court dismissed Fairley's claims against Stalder for prospective injunctive relief.[4] An unopposed motion for a partial final judgment under Rule 54(b) as to all claims

---

[3] The magistrate judge was quoting Anderson v. Pasadena Independent School District, 184 F.3d 439, 443 (5th Cir. 1999) (internal quotation marks omitted).

[4] The basis for this dismissal does not appear in the record, but from the motion Stalder filed in the district court, it appears to have been based on Rule 12(b)(6).

for damages and injunctive relief against Stalder in his individual and official capacities was then granted. This timely appeal followed.

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's dismissal of claims under Rules 12(b)(1) and 12(b)(6).[5] We "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff" and do not dismiss a claim "unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that it could prove consistent with the allegations in the complaint."[6] "However, conclusory allegations will not suffice to prevent a motion to dismiss, and neither will unwarranted deductions of fact."[7]

When claims have been asserted under § 1983 against a government official, plaintiffs "must plead specific facts that, if proved, would overcome the individual defendant's immunity defense; complaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss."[8] "When a public official pleads the affirmative defense of qualified immunity in his answer [and] the district court . . . require[s] the plaintiff to reply to that defense in detail[,] . . . . the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations."[9] Finally, "[i]n deciding a motion to dismiss[,] the court may consider documents attached to or

---

[5] Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, 354 F.3d 348, 351 (5th Cir. 2003); Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).

[6] Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999).

[7] United States ex rel. Willard v. Humana Health Plan of Tex., Inc., 336 F.3d 375, 379 (5th Cir. 2003) (internal quotation marks and citations omitted).

[8] Geter v. Fortenberry, 849 F.2d 1550, 1553 (5th Cir. 1988).

[9] Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995).

incorporated in the complaint and matters of which judicial notice may be taken."[10]

B. Merits

1. Official-Capacity Claims Against Stalder

Fairley asserts claims against Stalder in his official capacity for both damages and injunctive relief.

a. Damages

We begin an analysis of Fairley's claim against Stalder in his official capacity for damages under § 1983 by quoting long and clearly established Supreme Court precedent on the matter: "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."[11] As § 1983 only provides a remedy against a "person," the dismissal of Fairley's § 1983 claims was indisputably proper.

The claims asserted against Stalder in federal court on state law grounds[12] for money damages, although not barred by Will v. Michigan Department of State Police,[13] must still overcome Louisiana's Eleventh Amendment immunity.[14] Fairley asserts five theories for his conclusion that this immunity is overcome: (1) Louisiana has waived its sovereign immunity by

---

[10] Humana Health Plan of Tex., 336 F.3d at 379.

[11] Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989) (barring suits for money damages under § 1983 against states and state officials in their official capacity).

[12] Fairley claims that the alleged federal constitutional torts were also "practiced intentionally, with malice, and/or with reckless disregard for and/or with deliberate indifference to plaintiffs' federally protected rights, as well as plaintiffs' rights under State law."

[13] 491 U.S. at 71. The state law claims are not barred by Will because they are not brought under § 1983.

[14] See Edelman v. Jordan, 415 U.S. 651, 663-64 (1974) (barring suits against states and state officials in their official capacity for damages without mention of the state or federal nature of the claims); Hughes v. Savell, 902 F.2d 376, 378 (5th Cir. 1990).

litigating other Hurricane Katrina-related suits in federal court as a plaintiff; (2) Louisiana has constructively waived its sovereign immunity by participating in various federal programs; (3) Louisiana has waived its sovereign immunity by statute and constitutional provision; (4) Congress abrogated Louisiana's sovereign immunity as to the issues in the case, namely, flood control, hurricane protection, prison reform, and disaster preparation and response; and (5) the federal judiciary has "badly misconstrued" the Eleventh Amendment or it "does not apply under the facts and circumstances of this case." As to the final "theory," whatever its merit, we are unable to act on it as "only the Supreme Court may overrule a Supreme Court decision."[15] And, as we show below, Supreme Court precedents clearly speak to each of Fairley's contentions.

The first theory fails when analyzed as a litigation-conduct waiver.[16] There is an interesting argument to be made that invocations of federal jurisdiction in related suits waive sovereign immunity as to other suits. This

---

[15] Medellin v. Dretke, 371 F.3d 270, 280 (5th Cir. 2004).

[16] See Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 619 (2002) ("[A] State's voluntary appearance in federal court . . . [is] a waiver of its Eleventh Amendment immunity." (emphasis added)); see also id. ("[A] State waives any immunity respecting the adjudication of a 'claim' that it voluntarily files in federal court." (emphasis added) (internal quotation marks omitted)); Gunter v. Atl. Coast Line R.R. Co., 200 U.S. 273, 284 (1906) ("[W]here a state voluntarily becomes a party to a cause, and submits its rights for judicial determination, it . . . cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." (emphasis added)); cf. College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675 ("[O]ur test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." (internal quotation marks omitted)). Clearly, if invocations of a federal court's jurisdiction in one instance waived a state's sovereign immunity for all other suits, the exception would swallow the rule and the test for waiver would hardly be "stringent." Fairley's citation to Clark v. Barnard, 108 U.S. 436 (1883), is inapposite, as Louisiana has not intervened in the instant suit. If, for example, Louisiana should intervene in a case and assert a claim against the plaintiffs, but simultaneously assert a defense of sovereign immunity against claims brought against it, a very different case, under Clark and Lapides, would be present. Further, if this case were consolidated with a case in which Louisiana were a plaintiff, perhaps a different case would be present before us. Whether Lapides goes much further than Clark is a question on which we do not pass today.

argument emerges from language in Lapides v. Board of Regents of the University System of Georgia, in which the Supreme Court distinguished litigation-conduct waivers from other kinds of (repudiated) constructive waivers.[17]  There the Court said:

> [A]n interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages.[18]

Fairley, however, has made no effort to link other pending Katrina litigation to this case in a way that would highlight potential "inconsistency, anomaly, and unfairness."  He asserts that this litigation and the Louisiana v. United States[19] cases arise out of the "same transactions and occurrences" and are "logically related" to this case because they all relate to the failures of levees and retaining walls after Hurricane Katrina.  Additionally, he contends that the evidence in these cases will be the same as in the instant litigation.  These observations, without more particularized development to demonstrate the potential for "inconsistency, anomaly, and unfairness" (particularly anomaly, which we do not, without more, see here), or without an elaboration of why the cases arise out of the "same transactions and occurrences," are woefully insufficient to trump Louisiana's sovereign immunity.

The second theory, constructive waiver, is similarly meritless.  Even if constructive waiver arguments remain viable,[20] a waiver of this type may be

---

[17] 535 U.S. at 620.

[18] Id.

[19] E.g., Louisiana v. United States, No. 2:07-cv-05040 (E.D. La. filed Aug. 29, 2007).

[20] See Edelman v. Jordan, 415 U.S. 651, 673 (1974) ("Constructive consent is not a doctrine commonly associated with the surrender of constitutional rights and we see no place for it here.").

found only when a congressional desire to make states liable is found in the "unmistakable language in the statute itself."[21] That not being the case here (or, counsel not having invited our attention to any such statutory language), discovery is unnecessary and dismissal is appropriate.[22]

The third waiver argument advanced by Fairley turns on the contention that Louisiana has waived sovereign immunity expressly by constitutional provision and statute. Under the Supreme Court's rubric, however, an express waiver may be found only when a provision expresses "the State's intention to subject itself to suit in federal court."[23] There is no express consent to suit in federal court in section 10, article XII of the Louisiana Constitution or Louisiana Revised Statutes section 9:2798.1, the provisions cited by Fairley. Further, Louisiana Revised Statutes section 13:5106(A) provides: "No suit against the state or a state agency or political subdivision shall be

---

[21] Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 243 (1985). In fact, it is now more difficult for Congress to comply with this requirement from Atascadero after Seminole Tribe v. Florida, 517 U.S. 44, 55 (1996), which ended the Court's experimentation with abrogation through pre-Eleventh Amendment congressional powers.

[22] Fairley does not make clear in his briefs whether he is arguing that a constructive waiver has arisen because of participation in the programs or because of an actual agreement between Louisiana and the United States. In a late filing with this court, devoid of argument or specific citations, Fairley's counsel provided a copy of an article by Gil Seinfeld, Waiver-in-Litigation: Eleventh Amendment Immunity and the Voluntariness Question, 63 OHIO ST. L.J. 871 (2002). Perhaps the only basis of support in it for Fairley's request for discovery is the case Innes v. Kansas State University (In re Innes), 184 F.3d 1275 (10th Cir. 1999). There, the Tenth Circuit found a waiver of sovereign immunity in a contract between Kansas State University and the United States. We question the reasoning of the court in that case, particularly as Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440 (2004), addressed the same situation with different, and broader, reasoning. See Susan E. Hauser, Necessary Fictions: Bankruptcy Jurisdiction After Hood and Katz, 82 TUL. L. REV. 1181, 1202-09 (2008). Nevertheless, it is important to note that even Innes appears to recognize the necessity of a specific statutory or constitutional authorization for state officials to waive sovereign immunity by contract. See Innes, 184 F.3d at 1280 ("[T]hese cases . . . firmly establish that a state agent acting with proper authorization can effectuate a waiver . . . ." (emphasis added)). Fairley has not brought to our attention any authorization to enter into an agreement that waives immunity.

[23] Atascadero, 473 U.S. at 241 (emphasis in original).

instituted in any court other than a Louisiana state court." These are the reasons that we have unequivocally stated, on numerous occasions, that Louisiana has not waived its Eleventh Amendment immunity in this manner.[24]

Finally, the contention that Congress has abrogated Louisiana's immunity in the areas of flood control, hurricane protection, prison reform, and disaster preparation and response is feckless. Undoubtedly, Congress may abrogate state sovereign immunity,[25] but only pursuant to a post-Eleventh Amendment grant of congressional power and then only through an unequivocal expression of intent to exercise of that power.[26] There are no allegations that flood control, hurricane protection, and disaster preparation and response statutes were enacted by Congress pursuant to a post-Eleventh Amendment power or that Congress attempted to abrogate, unequivocally or otherwise, state sovereign immunity from suit in these areas. Nevertheless, the plaintiffs request discovery on these matters. As a statute "must contain an unequivocal statement of congressional intent to abrogate,"[27] however, discovery is unwarranted here and dismissal is appropriate.

b. Injunctive Relief

---

[24] E.g., Delahoussaye v. City of New Iberia, 937 F.2d 144, 147 (5th Cir. 1991).

[25] See Seminole Tribe v. Florida, 517 U.S. 44, 55 (1996).

[26] See id. at 55, 65, 72.

[27] Pace v. Bogalusa City Sch. Bd., 403 F.3d 272, 277 (5th Cir. 2005).

Injunctive relief against Stalder is also unwarranted.[28] Ex Parte Young does permit suits against state officials to force compliance with the Constitution and federal law,[29] but Stalder is not the proper party from whom to obtain relief from harms Fairley may have suffered (or may fear suffering) in OPCSO facilities. We find instructive district courts opinions that describe in some detail the Louisiana framework governing parish penal facilities. In Galo v. Blanco, for example, the court dismissed claims against Stalder, Governor Blanco, and Mayor Nagin because "there is no legal basis for holding [the defendants] liable for the conditions of plaintiff's confinement within the Orleans Parish Prison system."[30] We have examined Louisiana Revised Statutes sections 15:702, 15:704, 33:1435, and 33:4715, and we agree that day-to-day operation of the parish prison is the responsibility of the local sheriff, and that financing and maintenance are the responsibility of the local governing authority. Our analysis of sections 15:826 and 15:827, which establish the services and duties of the Department of Public Safety and Corrections, and section 15:823, which establishes the duties of the Director of Corrections, further supports this view. Accordingly, Stalder is not in a position to provide the requested relief.[31]

---

[28] The claims of former inmates for injunctive relief are moot. See Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001); Cooper v. Sheriff, Lubbock County, Tex., 929 F.2d 1078, 1084 (5th Cir. 1991); Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988). As some of the named plaintiffs may still be incarcerated, although whether or not that is so is hard to tell from Fairley's briefing, we nevertheless explain why the claims would fail even if they were not moot.

[29] 209 U.S. 123, 155-56, 166-67 (1908).

[30] No. Civ.A. 06-4290, 2006 WL 2860851, at *2 (E.D. La. Oct. 4, 2006); Broussard v. Foti, No. Civ.A. 00-2318, 2001 WL 258055, at *1-2 (E.D. La. Mar. 14, 2001).

[31] See Broussard, 2001 WL 258055, at *1-2; see also O'Quinn v. Manuel, 773 F.2d 605, 609 (5th Cir. 1985) ("The administration of the jails is the province of the sheriff."); Howard v. Fortenberry, 723 F.2d 1206, 1212-13 (5th Cir. 1984), vacated in part, 728 F.2d 712 (5th Cir. 1984) (noting the absence of a duty for the Secretary of the Louisiana Department of Public Safety and Corrections to supervise local prison officials). It is questionable whether anyone can be ordered to implement some of Fairley's requests. For example, it is doubtful that a

2. Individual-Capacity Claims[32]

Counsel for Fairley has abandoned any quarrel with the district court's determination that Stalder's defense of qualified immunity for federal claims against him individually was not overcome by Fairley's responsive pleading. Our searching review reveals no argument by Fairley, adequately briefed on appeal,[33] that engages this dispositive issue. Fairley's initial brief does not even contain the phrase "qualified immunity." Any references to Stalder lacking immunity generally are beyond conclusional. Fairley's reply brief, at which point it was too late to preserve the issue in any event,[34] is scarcely better. Accordingly, we will not disturb the district court's determination that Fairley did not adequate reply to Stalder's defense of qualified immunity.

As for the state law claims against Stalder, Fairley has again failed to brief the issue adequately. The district court was not able to find any allegations of action or inaction by Stalder individually in the complaint or in the ACLU report that was purported to be incorporated by reference.[35] Other than a few

---

district court could enjoin a person to "[b]egin to view detention as a process rather than a place."

[32] It appears at one point that Fairley is requesting injunctive relief against Stalder in an individual capacity. As Stalder has no control over OPCSO facilities in his official capacity, it is odd to suggest that he might have such control in an individual capacity. The claim, if in fact made, is frivolous.

[33] See Audler v. CBC Innovis Inc., 519 F.3d 239, 255 (5th Cir. 2008) ("A party waives an issue if he fails to adequately brief it. Though pro se litigants' briefs are liberally construed so as to avoid waiver of issues, the indulgence for parties represented by counsel is necessarily narrower." (internal quotation marks and citations omitted)). Were we to grant the same level of indulgence that we would to a pro se appellant, the shape of the briefs filed by counsel for Fairley prevents even a liberal construction from preserving the issue.

[34] See Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993).

[35] To describe the report as incorporated and properly part of the complaint is to be generous. It was attached without any particular references or evidence that it contained material concerning the plaintiffs in the action. We join the district court in condemning this type of trial practice. And, we analogize this method of pleading to "scattershot" rather than to "buckshot" as did the district court.

regurgitations of portions of his complaint, the only remotely relevant portions of Fairley's appellate brief are those that state: "The State of Louisiana and Secretary Stalder, in particular, played a prominent role in what happened, and what is likely to happen 'next time.' . . . '[S]omeone' had to make the decision not to evacuate the inmates . . . . Other than Sheriff Gusman and/or Secretary Stalder, who were the 'someone's' who made this moronic and misery-causing decision?" At best these are the "unwarranted deductions of fact" that are not considered sufficient to survive a Rule 12(b)(6) challenge. The rest of the hyperbolized, meandering comments in that section of the brief have to do with the Eleventh Amendment and counsel's railings about the perceived injustice of the heightened pleading rules. Nowhere does Fairley point to a place in the complaint where he alleges action or inaction by Stalder individually, without which the state law claims fail.

## III. CONCLUSION

For the foregoing reasons, the partial final judgment of the district court, dismissing all claims against defendant-appellant Richard L. Stalder, is, in all respects, AFFIRMED. We also GRANT Stalder's motion to strike sixty-one individuals from this appeal for want of jurisdiction over them or the order denying leave to add them below.[36] Therefore, the only plaintiffs-appellants

---

[36] We granted, in a per curiam order, Stalder's motion to strike the eight duplicate names that appeared in the notice of appeal sent to us. A motion to strike the names of sixty-one individuals who were not parties to the litigation below was carried with the case. These individuals were the subject of a failed (third) attempt by Fairley's counsel to amend the complaint in the district court. In denying the motion for leave to amend a third time, the magistrate judge said: "The proposed Third Supplemental and Amending Complaint appears to be a veiled effort to continue to add party-plaintiffs rather than properly pursue the class action certification. The repeated addition of named plaintiffs is prejudicial to the defendants and fails to account for the applicable statute of limitations and the relating-back doctrine . . . . To allow the plaintiffs to file the Third Supplemental and Amended Complaint would be prejudicial and futile." Rather than appeal this determination at the appropriate time, Fairley's counsel surreptitiously attempted to add these sixty-one plaintiffs to this appeal. When caught by counsel for Stalder, counsel for Fairley responded: "[P]laintiffs/appellants were erroneously denied leave to amend their Complaint . . . . They are aggrieved by this erroneous

subject to this judgment are Robert Fairley, Ronald George, Fay Hardy, Ladoia Smith, Nathaniel Carr, Kevin Green, Tyrell LeBlanc, and Clifton Thompson.

---

ruling . . . . They are 'appellants' no matter how one may look at this case."

Denial of a motion for leave to amend a complaint is ordinarily not immediately appealable, Wallace v. County of Comal, 400 F.3d 284, 291-92 (5th Cir. 2005), and it is quite unclear that any cognizable attempt to appeal that denial was made before slapping these extra names on the case. Further, the Federal Rule of Civil Procedure 54(b) partial final judgment in the district court did not include denial of this motion. And it is axiomatic that we only possess appellate jurisdiction, absent another basis urged, over final decisions, making appeal of this motion for leave to amend improper. See 28 U.S.C. § 1291 (2000). Even if we did possess jurisdiction, it was clearly not an abuse of discretion for the district court to deny leave to amend a third time, particularly given counsel's attempt to add plaintiffs endlessly without regard for the district court's prior orders. Therefore, as to this appeal, the sixty-one individuals are nonparties.

Nonparties may appeal only after satisfying a three-part test that focuses on actual participation by the nonparties, the equities in favor of hearing them, and the personal stake of the nonparties in the outcome. See Castillo v. Cameron County, Tex., 238 F.3d 339, 349-50 (5th Cir. 2001). Fairley's counsel has made absolutely no effort to identify this test or to apply it, and our sua sponte examination reveals it would be improper to allow these nonparties to appeal.

We remind counsel of Federal Rule of Appellate Procedure 38 for our purposes, and, for his purposes, we remind him of Louisiana Rules of Professional Conduct 1.1, 3.1, and 3.3(a)(2).